45 A.3d 1096

COMMONWEALTH of Pennsylvania, Appellee

v.

Willie Edward SNEED, Appellant.

Supreme Court of Pennsylvania.

Submitted July 26, 2011.

Decided June 4, 2012.

4

8

Victor J. Abreu, Jr., Federal Public Defender's Office, Billy Horatio Nolas, Defender Association of Philadelphia, Philadelphia, for Willie Edward Sneed.

Hugh J. Burns, Philadelphia, Amy Zapp, PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

PER CURIAM.

This is an appeal from the order of the Court of Common Pleas of Philadelphia County denying Appellant Willie Sneed's petition seeking relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. For the reasons that follow, we affirm the order of the PCRA court.

On October 13, 1980, Appellant fatally shot Calvin Hawkins ("Hawkins") after discovering that Hawkins and two accomplices sold him aspirin instead of cocaine.[1] A jury convicted Appellant of first-degree murder and possession of an instrument of crime on March 14, 1985.[2] During the penalty phase, the jury found two aggravating circumstances and no mitigating circumstances,[3] resulting in the imposition of a sentence of death.[4] We affirmed on direct appeal, *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987), and Appellant did not seek review before the United States Supreme Court.

On January 16, 1997, Appellant filed a timely *pro se* PCRA petition.[5] For unknown reasons, Appellant was not appointed

1. A full recitation of the underlying facts is set forth in *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987).

2. 18 Pa.C.S. § 2502(a) and 18 Pa.C.S. § 907, respectively.

3. The aggravating circumstances were a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9), and a prior murder conviction, 42 Pa.C.S. § 9711(d)(10).

4. Pursuant to 42 Pa.C.S. § 9711(c)(1)(iv), "the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance ... and no mitigating circumstance...."

5. The petition was timely under 42 Pa.C.S. § 9545(b)(1), as it was filed within one year of the effective date of the 1995 amendments to the PCRA. *See Commonwealth v. Fenati*, 561 Pa. 106, 748 A.2d 205 (2000) (exception exists to PCRA's one-year time requirement for those petitioners whose judgments had become final before 1995 amendments to the PCRA and who were filing their first PCRA petition, so long as petition was filed by January 16, 1997, *i.e.*, within one year of effective date of amendments).

counsel, and the PCRA petition was never reviewed. On July 12, 1999, then-Governor Thomas Ridge issued a warrant scheduling Appellant's execution for September 14, 1999. Newly appointed counsel filed an emergency motion for a stay of execution on July 22, 1999. The PCRA court granted the motion and ordered counsel to file an amended PCRA petition.

■ On April 12, 2000, Appellant filed an amended PCRA petition raising twenty-five claims of error. The Commonwealth filed a motion to dismiss, and the PCRA court granted an evidentiary hearing on two issues: (1) whether the prosecutor at the 1985 trial violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by using peremptory strikes in a racially discriminatory manner;[6] and (2) whether trial counsel was ineffective for failing to develop and present mitigating evidence at the penalty hearing. Notably, the PCRA court did not rule on Appellant's other claims of error.[7]

On January 4, 2002, following several days of evidentiary hearings, the PCRA court found merit to Appellant's claims. Accordingly, the court granted Appellant a new trial based on the *Batson* claim and a new penalty hearing based on the ineffectiveness claim. The Commonwealth appealed, challenging both grants of relief.[8]

6. Pursuant to *Batson,* the burden is on the defendant to prove that the prosecutor purposefully struck potential jurors based on their race. 476 U.S. at 93–97, 106 S.Ct. 1712. If the defendant makes a *prima facie* showing, the burden shifts to the prosecution to provide a race-neutral explanation. *Id.* at 98, 106 S.Ct. 1712. Thus, *Batson* eliminated the need to prove a systematic pattern of discrimination by focusing the inquiry on the conduct in a particular case.

7. The order granting the evidentiary hearing, issued on November 15, 2000, is not reflected on the docket, and we are unable to locate the order in the certified record. It appears that this is but one of many documents missing from the record in this matter. While it is generally true that case facts based on documents that are absent from the certified record may not be considered on appeal, *Commonwealth v. Williams*, 552 Pa. 451, 715 A.2d 1101 (1998), it is undisputed that the order in question was issued. Indeed, as discussed more fully *infra*, the order served as the basis for an opinion from this Court.

8. Under 42 Pa.C.S. § 9546(d) and Pennsylvania Rule of Criminal Procedure 910, we conduct a direct review of the grant or denial of post-conviction relief in capital cases.

This Court reversed in part and affirmed in part. *Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067 (2006). *Batson* was decided while Appellant's direct appeal was pending and we noted that Appellant was entitled to *Batson* 's retroactive benefit only if he anticipated, raised, and preserved a *Batson* claim at trial and on direct appeal. Since he did not, we held that any *"Batson qua Batson* claim," such as that which the PCRA court erroneously deemed both cognizable and meritorious on collateral attack, was waived under the PCRA, and Appellant could proceed only via a claim of ineffective assistance of counsel claim. We explained that counsel could not be faulted "for failing to raise a *Batson* objection at trial because *Batson* did not yet exist." We reasoned, however, that even if counsel could be faulted for failing to anticipate the *Batson* rule, there were "practical hurdles that would have derailed such an endeavor." *Sneed,* 899 A.2d at 1075–76. We concluded:

> [The] trial record contained no *Batson* objection, no argument, no finding of a *prima facie* case, no statement of reasons for strikes in the face of a finding of a *prima facie* case, and no assessment of the credibility of those reasons. The PCRA court's finding of ineffectiveness failed to accord **any** deference to the presumption of effectiveness, or the fact that *Batson* was a new rule. Because the award of a new trial is unsustainable under *Batson,* . . . . we vacate the order below granting a new trial.

*Id.* at 1077 (emphasis in original).

This Court affirmed the PCRA court's grant of a new penalty hearing based on counsel's failure to present mitigation evidence, explaining that trial counsel had an obligation to conduct a reasonable investigation into Appellant's background. Such an investigation would have revealed that Appellant experienced an abusive and dysfunctional childhood from which he continued to suffer mental health effects. We stated: "[I]f the jury had heard testimony and argument regarding the mitigation evidence presented by [Appellant] at the PCRA hearing, there is a reasonable probability that at least one juror would have struck a different balance and

voted not to impose the death penalty." *Id.* at 1084. Since Appellant was denied the effective assistance of counsel during the penalty phase, we affirmed the grant of a new penalty hearing.

Prior to the scheduling of the new penalty hearing, Appellant requested that the PCRA court address his allegations of guilt phase error that were raised in the amended petition but never reviewed. On November 16, 2006, the PCRA court held a hearing at which Appellant argued that while the court reviewed two of his claims, it did not rule on the other allegations of guilt phase error and was required to do so prior to the penalty hearing. *See Commonwealth v. Bryant*, 566 Pa. 307, 780 A.2d 646 (2001). The Commonwealth countered that in granting a hearing limited to the *Batson* and penalty phase ineffectiveness claims, the court rejected as meritless all other allegations of error. The PCRA court scheduled a hearing for December 28, 2006, to determine the status of the remaining PCRA claims. On that date, the PCRA court orally denied the remaining guilt phase claims without holding an evidentiary hearing.[9]

Appellant appealed, and the PCRA court issued an opinion on March 14, 2007. Appellant then sought review before this Court. On December 13, 2007, we quashed the appeal because the order was not "entered on the docket."[10] Order, 12/13/07, at 1. Neither party took any further action until October 9, 2009, when Appellant requested that the PCRA court resolve the matter.[11] The PCRA court entered an order

9. The hearing transcript does not appear in the certified record. Upon inquiring into the absence of the transcript and any related documents, we were apprised that the PCRA court is unable to locate the missing material(s) but is attempting to obtain a copy of the transcript from the court reporter.

10. The order denying Appellant's remaining claims was entered on the docket on December 28, 2006. Thus, it appears that we quashed the appeal because there was no written final order.

11. We note with disapproval the inordinate amount of time that passed between the quashal of the appeal and the action taken by the parties and the PCRA court. Indeed, it seems that Appellant was prompted to address the matter only by the pendency of a petition for a writ of *habeas corpus* in the United States District Court for the Eastern

dismissing the remaining claims on October 21, 2009. Appellant subsequently filed the instant appeal.

Before turning to the substance of Appellant's claims, we address the procedural posture of this case. In his amended PCRA petition, Appellant raised twenty-five claims of error. The PCRA court conducted a hearing on two of these claims. As noted in our 2006 decision, the PCRA court did not pass on the other claims raised. *Sneed*, 899 A.2d at 1071. Indeed, the parties agree that the PCRA court never issued an order dismissing or denying the remaining claims. N.T., 11/16/06, at 5, 13–14. Since these remaining allegations of error were never resolved, review by the PCRA court at the present stage was appropriate.[12] *See Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1192–93 (1999) (Castille, J., concurring) (emphasizing importance of meaningful opinion "which addresses all the relevant issues and which states the court's reasons for denying relief"); *Commonwealth v. Fletcher*, 586 Pa. 527, 896 A.2d 508, 523 (2006) (remanding to PCRA court to address any unresolved claims necessary for final disposition and to prepare written opinion).

█ Likewise, we ascertain no error in the PCRA court's decision to address the outstanding guilt phase claims prior to

District of Pennsylvania. Although the petition, which Appellant filed in December of 2006, was stayed pending the exhaustion of state remedies, Appellant was required to file status reports on the progress—or lack thereof—in his case. The October 5, 2009 progress report to the federal district court by Appellant's counsel, the Federal Community Defender Organization ("FCDO"), which is available on PACER, the internet website that provides access to federal case information and status, indicates the prior quashal order entered by this Court. The report states that counsel "will request … a written order" from the PCRA court at an upcoming status listing. There is no explanation why counsel did not request such an order in the twenty-two months since entry of our quashal order. We emphasize the necessity of counsel to act expeditiously so as to reduce unnecessary delays and ensure the efficient administration of justice.

12. Nonetheless, we reiterate that "to avoid piecemeal review, PCRA courts in capital cases should be thorough and should address all issues." *Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d 409, 435 (2009). In this vein, we note that the instant case has been in litigation for over twenty-five years and has now been the subject of three opinions by this Court.

conducting a new penalty hearing. In *Bryant, supra,* this Court held that review of a PCRA court's decision denying guilt phase relief should precede the imposition of a new sentence: "Re-sentencing the defendant before engaging in appellate review of the denial of PCRA relief ... results in piecemeal litigation, delay in the determination of guilt phase issues, and potential misuse of judicial resources if the new sentence is rendered moot by subsequent disposition of guilt phase issues." 780 A.2d at 648; *see also Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564, 568 (2005). Thus, the PCRA court followed an appropriate course of action by resolving the outstanding guilt phase claims prior to conducting the new penalty hearing.

We now turn to the substance of Appellant's PCRA challenges. "On appeal from the denial of PCRA relief, our standard of review is whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Abu–Jamal,* 574 Pa. 724, 833 A.2d 719, 723 (2003), *cert. denied,* 541 U.S. 1048, 124 S.Ct. 2173, 158 L.Ed.2d 742 (2004) (citing *Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94, 97 n. 4 (2001)). We must determine whether the PCRA court's denial of relief by dismissing Appellant's remaining guilt phase claims without an evidentiary hearing was proper.

In order to be eligible for relief, a PCRA petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in 42 Pa.C.S. § 9543(a)(2) [13] and that the

13. 42 Pa.C.S. § 9543(a)(2) provides:

(a) General rule.—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

allegation of error has not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). A claim is previously litigated under the PCRA if the highest appellate court in which the petitioner was entitled to review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2). An allegation is deemed waived "if the petitioner could have raised it but failed to do so before trial, at trial, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S. § 9544(b).

 Under Pennsylvania Rule of Criminal Procedure 909, the PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806, 820 (2004).

 Appellant raises claims of ineffective assistance of counsel under both the Pennsylvania Constitution and the United States Constitution. The test for ineffectiveness is the

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.
(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
(v) Deleted.
(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
(vii) The imposition of a sentence greater than the lawful maximum.
(viii) A proceeding in a tribunal without jurisdiction.

same under both charters. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[14] To prevail on a claim that counsel was constitutionally ineffective, the defendant must overcome the presumption that counsel was effective by showing that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001). "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioners burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 443 (2011). Moreover, a failure to meet any of the prongs bars relief. *Pierce*, 786 A.2d at 221–22.

■ Appellant was represented by the same counsel at trial and on direct appeal; thus, the PCRA proceeding was Appellant's first opportunity to challenge the stewardship of prior counsel. Consequently, Appellant's ineffectiveness claims are not waived.[15] *Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761, 775 (2004). We address each of his allegations *seriatim*.

## I. "Abdication" of the Defense

■ Appellant first asserts that counsel was ineffective because he "abdicated" the defense. Appellant raises three

14. While the test for ineffectiveness in Pennsylvania is the same as *Strickland*'s two-part performance and prejudice standard, this Court has divided the performance element into two distinct parts, *i.e.*, arguable merit and lack of reasonable basis, to create a tripartite analysis. *Commonwealth v. Jones*, 571 Pa. 112, 811 A.2d 994, 1002–03 & n. 7 (2002).

15. The Commonwealth argues that all of Appellant's claims are waived because he failed to include a signed certification from counsel as required by 42 Pa.C.S. § 9545(d)(1). Because we find, for the reasons discussed *infra*, that each of the claims the PCRA court denied without a hearing lacks merit, we decline to address the Commonwealth's waiver argument. *Commonwealth v. Collins*, 598 Pa. 397, 957 A.2d 237, 260 n. 12 (2008).

distinct claims under this rubric. Appellant initially contends that counsel was ineffective because he "failed to give an opening statement, which would have laid the foundation for an attack on the witnesses' credibility." Brief of Appellant at 9. Appellant presents no further argument or analysis in support of his bald assertion. As the Commonwealth and the PCRA court articulated, existing decisional law, which Appellant inexplicably fails to acknowledge, makes clear that the decision concerning such statements falls within the realm of trial strategy. This Court has recognized that counsel cannot be deemed ineffective *per se* for failing to make an opening statement. *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 531–32 (2009) ("[W]e will not presume that the PCRA court was unaware of the prevailing law, which holds that trial counsel 'cannot be deemed ineffective *per se* for failing to make an opening statement.' *Commonwealth v. Busanet*, 572 Pa. 535, 817 A.2d 1060, 1066 (2002)."). Appellant's undeveloped claim relative to counsel is insufficient to prove an entitlement to relief. *Commonwealth v. Wharton*, 571 Pa. 85, 811 A.2d 978, 986 (2002).

■ In his second claim, Appellant argues that counsel's performance was deficient because counsel failed to "adequately" cross-examine three of the Commonwealth's witnesses: Zeb Liverman, Charles Russell, and Robert Henderson. Although the PCRA court did not address this allegation in its opinion, a remand is unwarranted because it is apparent from the record that the claim lacks merit. *See Commonwealth v. Smith*, 609 Pa. 605, 17 A.3d 873, 888 (2011).

■ "Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Colavita*, 606 Pa. 1, 993 A.2d 874, 887 (2010) (quoting *Commonwealth v. Howard*, 553 Pa. 266, 719 A.2d 233, 237 (1998)). "A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substan-

tially greater than the course actually pursued." *Id.* A claim of ineffectiveness generally cannot succeed "through comparing, in hindsight, the trial strategy employed with alternatives not pursued." *Commonwealth v. Miller,* 572 Pa. 623, 819 A.2d 504, 517 (2002).

It must also be kept in mind that, as the Commonwealth avers, even though Appellant's hindsight claims involve trial strategy, Appellant herein failed even to make an allegation as to what counsel would state in response to the accusations. Commonwealth Brief at 17–19. Instead, Appellant presents mere conclusory allegations or requests a remand for a hearing. PCRA hearings are not discovery expeditions; rather, they are conducted when necessary to offer the petitioner an opportunity to prove that which he already has asserted, and only when his proffer establishes a colorable claim about which there remains a material issue of fact. *See Commonwealth v. Edmiston,* 578 Pa. 284, 851 A.2d 883, 887 n. 3 (2004). It is not enough to take a cold record, state that "counsel could have done this instead, or in addition," and then declare an entitlement to relief or discovery and further delay. On the proffers made, Appellant has not proven that counsel was ineffective or that he is entitled to a hearing.

With respect to Zeb Liverman ("Liverman"), Appellant argues that counsel failed to use available evidence to undermine his credibility. In particular, Appellant claims that counsel failed to elicit evidence pertaining to Liverman's history of drug use and criminal behavior. This assertion is belied by the record. Defense counsel aggressively cross-examined Liverman about his lengthy criminal history, including twenty prior arrests, six convictions, and several parole violations. N.T., 3/11/85, at 139–42. Defense counsel also elicited testimony regarding Liverman's activities as a drug dealer and his drug use on the night in question, including the large quantity of cocaine he consumed. *Id.* at 142–50, 159. Thus, there is no merit to the contention that defense counsel failed to inquire into Liverman's drug use or criminal history.

 Appellant further avers that counsel was ineffective for failing to cross-examine Liverman about a statement he gave to the police. Appellant cites the following excerpt: "I could have been [at the garage at 17th and Kater] but I don't remember[,] I was doing heavy drugs at the time, I was doing heroin, cocaine, meth, anything I could get my hands on, so I don't really remember." Exhibit D, Certified Record ("C.R.") at D–25. Appellant conveniently omits that immediately after claiming he remembered nothing about the murder, Liverman stated, "Wait a minute let me tell you the truth about this." *Id.* Liverman then proceeded to recount the events surrounding the shooting and also told police about the murder of Anthony D'Amore, another of Appellant's victims, discussed *infra.* If counsel had questioned Liverman about the initial comment, the Commonwealth could have rehabilitated him with the remainder of his statement. Consequently, we will not find counsel ineffective for failing to introduce this statement, as counsel's strategy had a reasonable basis designed to effectuate Appellant's interests.

As previously noted, defense counsel forcefully cross-examined Liverman, portraying him as a habitual criminal who was high on drugs at the time of the murder. The mere fact that current counsel might have utilized an alternative strategy does not render the approach of trial counsel ineffective. Accordingly, the claim that defense counsel failed to "adequately" cross-examine Liverman fails.

 Appellant makes a similar claim of dereliction of duty with regard to counsel's cross-examination of Charles Russell ("Russell"). He asserts that counsel "did next to nothing" with Russell's initial statement to the police, taken shortly after the murder, in which he denied any knowledge of the events. Brief of Appellant at 15. Once again, a review of the record belies this claim. Indeed, defense counsel thoroughly queried Russell about his initial statement, his motives for denying knowledge of the crime, subsequent false statements he made to the police, and his eventual accurate recitation of the events surrounding the murder. N.T., 3/11/85, at 86–100.

Thus, the record rebuts Appellant's allegations of ineffectiveness and this claim fails.

Also baseless are Appellant's allegations of ineffectiveness founded upon the cross-examination of Robert Henderson ("Henderson"). Appellant does not explicate the precise grounds for his claim of ineffectiveness other than to state that counsel failed to "adequately" impeach Henderson regarding his criminal background. Appellant intimates that this failure was particularly egregious since Henderson was the "only" witness who could place Appellant near the crime scene. We find these contentions to be completely devoid of merit. Defense counsel's first question to Henderson concerned his arrest record, which elicited testimony that Henderson had been arrested "at least fifteen times" for numerous robberies and burglaries. N.T., 3/12/85, at 36. Counsel's cross-examination also exposed Henderson's drug use, his failure to report the murder, and numerous inconsistencies in his testimony. *Id.* at 37–90. Consequently, Appellant has failed to demonstrate that counsel did not "adequately" cross-examine Henderson.

In his final claim that counsel "abdicated" his defense, Appellant asserts that counsel was ineffective for failing to present the "exculpatory" testimony of three witnesses: David Paris, Natalie Dickerson, and Dewitt Poindexter. According to Appellant, all three individuals gave statements to the police in 1980 indicating that Appellant was not present in the garage near the shooting on the night in question. He faults trial counsel for failing to speak to these witnesses and for failing to present their testimony to the jury.

When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial

as to have denied the defendant a fair trial. *Commonwealth v. Johnson,* 600 Pa. 329, 966 A.2d 523, 536 (2009); *Commonwealth v. Clark,* 599 Pa. 204, 961 A.2d 80, 90 (2008). To demonstrate *Strickland* prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson,* 597 Pa. 402, 951 A.2d 1110, 1134 (2008). Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. *Commonwealth v. Auker,* 545 Pa. 521, 681 A.2d 1305, 1319 (1996). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Id.*

As the PCRA court observed, Appellant has not—and cannot—show that the testimony of these witnesses would have been helpful to the defense. The statements on which Appellant relies are not exculpatory; rather, they demonstrate only that the witnesses in question possessed no knowledge about the shooting. Indeed, the prosecutor stated before the court:

> [T]here are copies of statements by other people that were inside the garage at 17th and Kater on the night that the event[s] surrounding the shooting began. Specifically, there are statements attributable to [David Paris, Natalie Dickerson, and Dewitt Poindexter]. **All of them gave information saying that they didn't know anything.** However, if [defense counsel] needs any of them to be present during his trial or during his part of the case ... I will of course make them available.

N.T., 3/13/85, at 9–10 (emphasis added). Defense counsel responded, "I have reviewed those copies of the statements ... and as part of our defense, we agreed that they would not be necessary to be introduced." *Id.* at 11. Counsel clarified that "we" referred to "me and my client." *Id.*

Since the statements do not exculpate Appellant, he has failed to show that the testimony of the uncalled witnesses would have been "beneficial under the circumstances of the

case." *Gibson*, 951 A.2d at 1134. Thus, Appellant has not demonstrated prejudice. As such, counsel cannot be deemed ineffective, and the PCRA court did not err in denying this claim without a hearing.

## II. Prosecutorial Misconduct

Appellant's second issue delineates six allegations of prosecutorial misconduct committed during closing argument, followed by general and perfunctory assertions of trial counsel's ineffectiveness for failing to object and appellate counsel's ineffectiveness for failing to raise the alleged "meritorious challenges to the prosecutor's arguments." Brief of Appellant at 30–31. The PCRA court dismissed all of Appellant's claims. As discussed more fully below, we agree that Appellant's claims of prosecutorial misconduct lack merit; hence, his allegations of ineffectiveness cannot succeed, and dismissal without a hearing was appropriate.

In reviewing an assertion of prosecutorial misconduct, our inquiry "center[s] on whether the defendant was deprived of a fair trial, not deprived of a perfect trial." *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 231 (1995) (citing *Commonwealth v. Holloway*, 524 Pa. 342, 572 A.2d 687, 693 (1990)). It is well-settled that a "prosecutor must be free to present his or her arguments with logical force and vigor." *Commonwealth v. Hutchinson*, 25 A.3d 277, 306 (Pa.2011). Comments grounded upon the evidence or reasonable inferences therefrom are not objectionable, nor are comments that constitute "oratorical flair." *Id.* at 307. Furthermore, the prosecution must be permitted to respond to defense counsel's arguments. *Id.* Consequently, this Court has permitted vigorous prosecutorial advocacy provided that "there is a reasonable basis in the record for the [prosecutor's] comments." *Commonwealth v. Robinson*, 581 Pa. 154, 864 A.2d 460, 516–17 (2004). A prosecutor's remarks do not constitute reversible error unless their unavoidable effect would prejudice the jurors, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Bond,* 539 Pa. 299, 652 A.2d 308, 315 (1995). Finally, we review the allegedly improper remarks in the context of the closing argument as a whole. *LaCava,* 666 A.2d at 235.

Appellant first posits that the prosecutor committed misconduct by "suggesting that jurors are Commonwealth employees who are there to do the prosecutor's bidding." Brief of Appellant at 23. In his closing argument during the guilt phase, the prosecutor stated:

> Ladies and Gentlemen, it is common practice for criminal lawyers on both sides, when they first stand up to address the jury at the end of the case to thank you for your participation in the trial. I am not a subscriber to that particular practice because I firmly believe, as I told you when I opened a few days ago, that jury service is a job and it is a job that you haven't yet completed. I am quite sure that none of your employers pat you on the back until you finish the job, and I don't want to do that either.

N.T., 3/13/85, at 34. Appellant asserts that these remarks suggested to the jurors that the prosecutor was their "boss" and that they had an obligation to perform their "job" by finding Appellant guilty.

We find no merit to Appellant's allegation. The comment came at the beginning of the prosecutor's closing argument and was designed to mirror that of defense counsel, who thanked the jurors for their attention and fulfillment of their "duty" as citizens. N.T., 3/13/85, at 12. Thus, when viewed in context, it is apparent that the prosecutor was responding to defense counsel's argument by reminding the jurors that their job or "duty" was not yet complete; that they still had to reach a verdict. At no point did the prosecutor link the notion of a "job" to the Commonwealth or indicate that he was their "boss." The prosecutor simply echoed the argument of defense counsel and reminded the jurors that they had yet to fulfill their obligations. Thus, there is no merit to this claim, and the PCRA court did not err in denying an evidentiary hearing.

■ Appellant next asserts that the prosecutor deliberately misstated the law when he told the jury, "You are not here to judge the witnesses; you are here to judge [Appellant], so let's keep that in mind." N.T., 3/13/85, at 40. According to Appellant, this statement was particularly egregious because the only evidence linking him to the crime was the testimony of the Commonwealth's witnesses, making their credibility a central issue.

■ In advancing his argument, Appellant takes the prosecutor's comment out of context. The prosecutor told the jury:

You have to focus in this case upon what you did hear from the witnesses, the two main ones of which are Robert Henderson and Zeb Liverman. They are the key witnesses in this case. And the operative word here ... is witnesses. They are not defendants ... they are not on trial here. [Appellant] is on trial here. You may not care for the lifestyles that [they] lead; I don't either, but that doesn't make any difference as far as the guilt or innocence of [Appellant] is concerned. You are not here to judge the witnesses; you are here to judge [Appellant]. Let's focus on [Appellant] and not on the lifestyles of the witnesses.

N.T., 3/13/85, at 40. Thus, the prosecutor's comment was not tantamount to telling the jurors that they had no obligation to assess the credibility of the witnesses. Rather, he was suggesting that the jury should look beyond the character flaws of the Commonwealth's witnesses and focus on the evidence presented. It also bears noting that the prosecutor's remarks were in response to defense counsel's closing argument, in which he aggressively attacked the credibility of the witnesses. Finally, we observe that in its charge to the jury, the trial court remedied any harm by stating: "[Y]ou have the sole responsibility of deciding whether the testimony of each witness in the case is truthful and accurate and is to be believed or disbelieved in whole or in part." N.T., 3/13/85, at 77–78. Consequently, we find Appellant's claim to be without merit.

██ Appellant also argues that the prosecutor committed misconduct by telling the jury that it had a duty to convict in order to make the neighborhood a safer place. According to Appellant, the prosecutor's comment injected an impermissible factor into the deliberative process.

In advancing this claim, Appellant improperly strings different parts of the closing argument together. The prosecutor stated: "[I]n the section of South Philadelphia where you heard about in this case [ ] it is not very safe for a person to raise a family anymore." N.T., 3/13/85, at 41. Over twenty pages later in the transcript, the prosecutor indicated, "So now, [l]adies and gentlemen, it is time for you to do your duty.... Now is the time for you to go out and deliberate and return a verdict of guilty in this case." N.T., 3/13/85, at 66. Upon reviewing the entire closing, it is apparent that the prosecutor never argued that the jury had a duty to convict in order to make the neighborhood safer. This *post hoc* argument, crafted by taking isolated statements out of context, fails to withstand scrutiny.

Even when the comments identified by Appellant are viewed in isolation, there is no error. When read in context, the initial comment regarding the high-crime area of Philadelphia in which the murder occurred was simply an explanation that the Commonwealth takes its witnesses as it finds them. The prosecutor was merely attempting to convey to the jury that since the murder occurred in a high-crime area, it was not surprising that the witnesses had criminal histories.

Likewise, there is no error in the statement that the jury should return a guilty verdict. "We can find no error in a prosecutor asking a jury to render a verdict favorable to his position." *Commonwealth v. Kemp,* 562 Pa. 154, 753 A.2d 1278, 1284 (2000), *abrogated on other grounds by Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385 (2003). Since the argument was entirely proper, counsel had no basis on which to object.

██ In his fourth allegation of misconduct, Appellant avers that the prosecutor improperly commented on Appellant's

28

silence. To support his claim, Appellant relies upon the following statement: "[Appellant] didn't say anything because he has an absolute and constitutional right not to open his mouth for the entire length of this trial, but he is still on trial because other people said he did it." N.T., 3/13/85, at 49. Appellant argues that the prosecutor made this statement with a "negative tone" such that "the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Bontempo v. Fenton*, 692 F.2d 954, 959 (3d Cir.1982). Additionally, Appellant contends that the prosecutor shifted the burden of persuasion by requiring him to prove his innocence. N.T., 3/13/85, at 56 ("[Defense counsel] suggested to you that [the witnesses] had three years to get their acts together and that they are covering for somebody, although he doesn't give you the slightest hint who it is they are covering for.").

█ Appellant's allegations are frivolous. Regardless of any alleged derogatory tone in which the statement was made, the prosecutor's statement was an accurate summary of the law. Assuming arguendo that the prosecutor's comment was improper, the trial court cured any error in its charge to the jury, explaining:

Now, I have told you before that it is entirely up to the defendant in every criminal trial, and that includes this one, whether or not to testify. The defendant has an absolute right, founded on the constitution, to remain silent. Since that occurred in this case, I now tell you, unequivocally, that you must not, you may not draw any inferences adverse to the defendant from the fact that he did not testify nor did he present testimony on his own behalf.

N.T., 3/13/85, at 79. Thus, this claim fails.

█ Likewise, there is no merit to the allegation that the prosecutor shifted the burden of persuasion by commenting on Appellant's failure to substantiate his contention that another individual committed the crime. The prosecutor's remark was in response to the theory espoused by the defense: that one of the Commonwealth's witnesses committed the murder since

Appellant was the "perfect patsy." N.T., 3/13/85, at 28. It was entirely proper for the prosecutor to respond to defense counsel's argument and emphasize the implausibility of Appellant's "cover up" claims. *Hutchinson,* 25 A.3d at 307.

Appellant next asserts that the prosecutor engaged in misconduct when he bolstered the credibility of Commonwealth witness Charles Russell. Our review of the record reveals that counsel in fact objected to the exchange Appellant underscores. Appellant, however, ignores the context of the exchange. As the Commonwealth notes, Appellant fails to acknowledge that the exchange occurred on redirect after Appellant himself broached the subject on cross-examination. Moreover, Appellant litigated the claim on direct appeal, a fact Appellant inexplicably fails to mention. *See Sneed,* 526 A.2d at 754–56; 42 Pa.C.S. § 9543(a)(3). Finally, Appellant never explains why counsel's litigation of the claim at trial and on direct appeal was deficient. Couching this issue as one of counsel's ineffectiveness does not overcome the statutory bar, "for it is well-settled that a PCRA petitioner cannot obtain additional review of previously litigated claims by presenting new theories of relief including allegations of ineffectiveness." *Wharton,* 811 A.2d at 984. In these circumstances, the claim plainly is both previously litigated and frivolous. Counsel must be mindful of their own ethical duties, including the duty of candor to the tribunal. *See* Pa.R.P.C. 3.3.

In his final allegation, Appellant contends that the prosecutor engaged in misconduct by making a "flurry of inflammatory" and "vindictive" remarks designed solely to inflame the jury's passions. Brief of Appellant at 28. Appellant objects to the following remarks:

> But maybe, maybe we ought to give [Appellant] a break. Maybe we ought to show him a little mercy and maybe we ought to give him a second chance. But when you get to that point, ladies and gentlemen, you recall the testimony in this case because that is what is important here, and you give him the same break he gave to [the victim] when he lured him, lured him back to south Philadelphia to the

garage where he knew his gun was so that he could shoot him and kill him.

You show this guy the same mercy he showed [the victim] when he chased him down the street shooting at him, hitting him in the lung and severing a major artery, and hitting him in both arms. You give him the same second chance he gave to [the victim] who, lying on the street already suffering from a mortal wound, looked up at [Appellant] . . . only to receive . . . a bullet to the brain.

He is not entitled to any more chances, ladies and gentlemen. He is entitled to a fair trial by the jury of his peers. That is the thirteen of you. And that is a lot more than [the victim] got. [The victim] died because he had the audacity to steal $50.00 from [Appellant]. I have tried a lot of theft cases in my career, ladies and gentlemen, but never saw one yet where the death penalty was appropriate.

You people are here to judge [Appellant]. [Appellant] did the judging on [the victim] himself. He tried him and he convicted him and he executed him.

N.T., 3/13/85, at 66–68. Appellant avers that the argument as a whole was designed to destroy the impartiality of the jurors and that the comments concerning "mercy" were not related to the evidence.[16]

This allegation is devoid of merit as the remarks were proper closing argument. As previously noted, a prosecutor is "free to present his or her arguments with logical force and vigor." *Hutchinson,* 25 A.3d at 307. The prosecutor's description of the crime was based solely on the evidence. Any "oratorical flair" woven into this fact-based description does not give rise to a finding of misconduct. Additionally, the

---

16. Appellant raises the related claim that the trial court erred in failing to "correct the prosecutor's improper arguments." Brief of Appellant at 30. Although not explicitly stated, it appears that Appellant likewise faults counsel for failing to object to the court's neglect of its supposed *sua sponte* duty. Appellant has identified no applicable authority—for there is none—to substantiate his assertion that the trial judge was obligated to take this action absent a request from the defense. *See Commonwealth v. Ali,* 608 Pa. 71, 10 A.3d 282, 304 n. 15 (2010). Thus, this argument is frivolous.

prosecutor's remarks were designed to remind the jury that they should reach a verdict based on the evidence, as opposed to notions of "mercy." The closing statements of the prosecutor were entirely proper.

Since all of Appellant's allegations of prosecutorial misconduct lack merit, counsel was not ineffective for failing to raise them. Thus, the PCRA court did not err in denying an evidentiary hearing.

## III. Jury Interference

Appellant next asserts that counsel was ineffective for not raising a claim of jury interference. This claim is confined to an allegation respecting counsel's performance on appeal. Brief of Appellant at 37 ("[C]ounsel properly preserved the issue at trial.") The PCRA court reviewed and rejected this contention, finding that it was pure speculation. Once again, we agree with the PCRA court.

On February 25, 1985, several weeks prior to the trial in the instant case, Appellant was convicted of second-degree murder for the killing of Anthony D'Amore. *See Commonwealth v. Sneed*, 362 Pa.Super. 640, 520 A.2d 1217 (1986). D'Amore's widow attended Appellant's trial for the murder of Calvin Hawkins. On the second day of trial, defense counsel raised the following "point for the record":

Defense: [A]s the court is well aware, Mrs. D'Amore who was the victim's wife in the last Sneed case is present in the courtroom with either her husband or her paramour or something.

The court: I am puzzled about why she is here. I assume she is not a witness.

Prosecutor: She called me to see if she could come down to see what happens in the second case.

Defense: I am not particularly crazy about it, but I have no reason to say anything with regard to that.

The court: Wait a minute. Is she doing anything with the jury other than sitting there?

Defense: I don't know. When Your Honor gave the jury permission to go to the ladies room. . . .

The court: They were accompanied by [a court officer].

Defense: That's correct, and I understand that M[r]s. D'Amore tried to go into the ladies room, and rightfully so, the [court officer] told M[r]s. D'Amore you cannot go in there. I assume [a court officer] took them into the men's room but [Mrs.] D'Amore's husband, or paramour or whatever, was walking in the hall—what I don't need is for somebody to do some talking out loud—and I'm only presupposing at this point—saying I would like to see this guy get what he deserves.

The court: Please, sir, don't add anything you don't know. . . . I see no reason for them to be here, but I have no way in the law to keep them away. The only thing I can do is keep them away from the jury.

N.T., 3/11/85, at 61–62.

Two days later, prior to the start of closing arguments, defense counsel informed the court that one of the jurors, Alberta McCool, was approached by a woman in the bathroom. The court held a colloquy with Ms. McCool, during which she informed the court that the woman asked her about "the wind and her hairdo" and how she styled her hair. Ms. McCool stated that she did not respond to the woman, did not know who she was, and did not inform anyone but the court. Thereafter, to the assent of both the prosecutor and defense counsel, the court informed Mrs. D'Amore and her companion that they were no longer permitted in the courtroom.[17] N.T., 3/13/85, at 3–7.

17. While Mrs. D'Amore and her companion abided by the order not to enter the courtroom, they were seen in the hallway during the penalty phase. Defense counsel claimed that Appellant observed them exchanging "pleasantries" with the jurors as they entered the courtroom. The prosecutor stated that this allegation was highly suspect since Appellant was not allowed in the hallway with the jurors. The court took note of this information, but declined to take any action since there was no actual evidence of any contact. The court likewise refused defense counsel's request to individually question each juror to ascertain whether they had contact with Mrs. D'Amore. N.T., 3/15/85, at 34–37. While Appellant cites this occurrence in his brief, the instant

Based on the foregoing, Appellant contends that the actions of Mrs. D'Amore and her companion "infected the trial proceedings, interfered with specific members of the jury, and interfered with [Appellant]'s rights to due process and an impartial jury." He maintains that counsel was ineffective for "failing to raise and/or properly litigate this claim on appeal." Brief of Appellant at 37.

An extraneous influence may compromise the impartiality and integrity of the jury, raising the specter of prejudice. *See Carter by Carter v. U.S. Steel Corp.,* 529 Pa. 409, 604 A.2d 1010, 1015–16 (1992) (plurality). The relevant inquiry is whether the extraneous influence caused "a reasonable likelihood of prejudice." *Id.* at 1016; *see also Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733, 739 (1983) (requiring showing that contact between member of the jury and court officer resulted in "a reasonable likelihood of prejudice" to defendant.). In making the "reasonable likelihood of prejudice" determination, the court must consider: "(1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature." *Carter,* 604 A.2d at 1017 (footnote omitted). The burden is on the party claiming prejudice. *Id.*

While the contact was improper, Appellant has failed to demonstrate that there was a reasonable likelihood that he suffered prejudice. Mrs. D'Amore's remarks bore no relation to the case and were innocuous.[18] Moreover, her comments were "ambiguous and not of such a nature that it can be said without hesitation that the speaker intended to influence a decision adverse to [Appellant]." *Commonwealth v. Laird,* 555 Pa. 629, 726 A.2d 346, 357 (1999).

appeal concerns only guilt phase claims. Consequently, we will not address this portion of Appellant's argument.

18. It is not immediately apparent from the record how the court or the attorneys knew that the woman in question was Mrs. D'Amore.

Further, Appellant's claim is entirely speculative. Appellant made no proffer as to what trial counsel would say in response to this claim. Counsel was at the scene, he noticed the prospect of some supposed "improper contact," the issue was explored, and nothing was developed that supports a claim on appeal that Appellant was somehow denied a fair trial because of innocuous remarks by a person who may have been related to another of Appellant's murder victims and who had as much right as any member of the public to attend Appellant's trial.

■ Based on the record, we cannot conclude that Mrs. D'Amore's comments compromised the integrity of the jury. Consequently, this claim lacks arguable merit. Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1210 (2006). By extension, the PCRA court did not err in denying the claim without a hearing.

## IV. *Brady* Violation

■ Appellant next asserts that the Commonwealth withheld potentially exculpatory evidence in violation of the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").[19] Appellant avers: "[T]he Commonwealth withheld information concerning prior cooperation between [Commonwealth witness] Charles Russell and the Philadelphia Police, gave favorable treatment to witnesses, and also threatened witnesses for favorable testimony." Brief of Appellant at 39. Appellant then makes a *pro forma* claim that counsel was ineffective. Appellant fails, however, to identify how counsel was derelict in his duty.

19. A *Brady* violation consists of three elements: (1) suppression by the prosecution (2) of evidence, whether exculpatory or impeaching, favorable to the defendant, (3) to the prejudice of the defendant. *Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 30 (2008).

Instead, Appellant, states only that he should be allowed to conduct discovery and be granted an evidentiary hearing to develop his claim.

Appellant's assertion is comprised entirely of conjecture. The burden rests with Appellant to **"prove, by reference to the record,** that evidence was withheld or suppressed by the prosecution." *Commonwealth v. Porter,* 556 Pa. 301, 728 A.2d 890, 898 (1999) (citations omitted) (emphasis added). Appellant has failed to prove the existence of the allegedly exculpatory evidence, let alone that it was material and deprived him of a fair trial. *See Paddy,* 609 Pa. 272, 15 A.3d at 450. Likewise, Appellant does not identify the "witnesses" who received this supposed favorable treatment. Appellant's bald assertions are insufficient to establish a viable *Brady* claim.

Appellant cannot circumvent his pleading requirement by requesting an evidentiary hearing to determine whether counsel was ineffective for failing to develop the purported exculpatory evidence. "An evidentiary hearing . . . is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." *Commonwealth v. Scott,* 561 Pa. 617, 752 A.2d 871, 877 n. 8 (2000); *Commonwealth v. Edmiston,* 578 Pa. 284, 851 A.2d 883, 887 n. 3 (2004).

In light of Appellant's complete failure to meet his burden of proving the *Brady* claim and counsel's ineffectiveness, he is not entitled to relief.

## V. Treaty Bar

Appellant proposes a claim based upon an alleged violation of the United Nations Organization's International Covenant on Civil and Political Rights ("ICCPR") and other similar treaties. *See* International Covenant for Civil and Political Rights, Dec. 16, 1966, 999 U.N.T.S. 171, 6 I.L.M. 368 (entered into force Mar. 23, 1976). Appellant posits that the ICCPR bars the application of any state procedural rule as a basis to deny substantive review of a federal "constitutional violation in

a death penalty case." Appellant's Brief at 45. He suggests that the United States is bound by treaty to ensure that death sentences are not imposed or carried out in "contravention of the substantive standards embodied in the Fifth, Eighth, and Fourteenth Amendments" concerning cruel and unusual punishment. *Id.* at 47. This claim is frivolous. As the Commonwealth points out, Appellant is not currently under a sentence of death. Moreover, in a case the FCDO itself litigated and lost, this Court expressly rejected the notion than an ICCPR claim is cognizable under the PCRA. *See Commonwealth v. Judge,* 591 Pa. 126, 916 A.2d 511 (2007) (discussing and rejecting claims premised upon ICCPR and dismissing legal predicate upon which such treaty-based theories depend).

 Assuming, *arguendo,* that Appellant **did** possess a meritorious claim under the PCRA, the United States government's treaty obligations do not preclude the application of state procedural rules to bar judicial review of that claim. In *Breard v. Greene,* 523 U.S. 371, 375, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998), the United States Supreme Court explicitly stated that "it has been recognized in international law that, absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that state." *See Sanchez–Llamas v. Oregon,* 548 U.S. 331, 347, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006) (non-self-executing treaties do not create judicially-enforceable rights or procedures); *accord Commonwealth v. Quaranibal,* 763 A.2d 941 (Pa.Super.2000) (applying *Breard* holding that international treaty may not trump state procedural rules). Application of Pennsylvania's procedural rules, as a basis to deny review of Appellant's PCRA claim, does not violate the implementation of any international treaties. Appellant's claim is wholly baseless.

## VI. Cumulative Effect of Errors

 Finally, Appellant asserts that he is entitled to relief in light of the cumulative effect of the errors he has presented in his brief to this Court. "As this Court has often held, no number of failed claims may collectively warrant relief if they fail to do so individually." *Commonwealth v.*

*Rainey*, 593 Pa. 67, 928 A.2d 215, 245 (2007); *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 548 (2006). Consequently, where claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. *Commonwealth v. Sattazahn*, 597 Pa. 648, 952 A.2d 640, 671 (2008). Where the failure of individual claims is founded upon a lack of prejudice, then the cumulative prejudice from the individual claims is properly assessed. *Johnson*, 966 A.2d at 532.

We rejected the majority of Appellant's allegations of error for lack of arguable merit. Accordingly, there is no basis for an accumulation claim. As no claim is rejected solely on grounds of an absence of prejudice, there are no claims to cumulate.

Having reviewed Appellant's allegations of error, and having concluded that all lack merit, we affirm the order of the PCRA court denying Appellant's amended petition without an evidentiary hearing.[20] We remand the case to the PCRA court to conduct, as expeditiously as possible, the new penalty phase hearing pursuant to our previous decision. *See Sneed*, 899 A.2d 1067.

Jurisdiction relinquished.

Justice McCAFFERY did not participate in the consideration or decision of this case.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices EAKIN and BAER, and TODD join the per curiam opinion.

Justice SAYLOR files a dissenting opinion.

20. Appellant's boilerplate argument that he is entitled to an evidentiary hearing on all of his claims is rejected. We have considered all of his contentions individually, including all of his proffers, or lack thereof, made to the PCRA court. Mindful of the purpose of an evidentiary hearing, we conclude that Appellant has not proven error with respect to any of his claims in this regard. *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 877 n. 8 (2000) ("An evidentiary hearing ... is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness."); *Commonwealth v. Edmiston*, 578 Pa. 284, 851 A.2d 883, 887 n. 3 (2004).

Justice SAYLOR, dissenting.

I respectfully dissent in favor of an evidentiary hearing regarding Appellant's guilt-phase ineffectiveness claims. Given the extent of the patent ineffectiveness we have seen in a fair number of these cases (including this one relative to the penalty phase at least, *see* Majority Opinion, at 12–13, 45 A.3d at 1103), I maintain that such claims should be decided on a reasonably developed record.

Finally, I reiterate that "I would disapprove the prosecutorial practice of asking capital sentencing juries to render verdicts in the same cold deliberate manner as the victim was killed, since under the Eighth and Fourteenth Amendments to the United States Constitution, the obligation of jurors is to follow the law, not the lawless mindset of the killer." *Commonwealth v. Freeman,* 573 Pa. 532, 587, 827 A.2d 385, 418 (2003) (Saylor, J., concurring and dissenting) (citing *Penry v. Johnson,* 532 U.S. 782, 797–98, 121 S.Ct. 1910, 1920–21, 150 L.Ed.2d 9 (2001), and *Commonwealth v. King,* 554 Pa. 331, 359–60, 721 A.2d 763, 777 (1998)).