J-S06045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN TOOTLE | : | |
| | : | |
| Appellant | : | No. 2542 EDA 2019 |

Appeal from the PCRA Order Entered July 1, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0014103-2012


BEFORE:  PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED:  MARCH 31, 2021**

Brian Tootle (Tootle) appeals from the July 1, 2019 order of the Court of Common Pleas of Philadelphia County (PCRA court) dismissing his petition for relief pursuant to the Post-Conviction Relief Act.[1]  Tootle argues that trial counsel was ineffective because he failed to call the witness who performed a DNA analysis of two firearms at trial.  We affirm.

**I.**

The trial court previously set forth the facts of this case as follows:

On July 27, 2012, at approximately 8:37 p.m., Gerald Jones, Nafis Armstead, and several of their friends were outside on the 200 block of East Sharpnack Street in Philadelphia.  Earlier, and throughout the day, [Tootle] and two individuals were in a green

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541 et seq.

van driving around the block and parking several times before driving off again.[] As Jones and Armstead were talking, the van pulled up to the curb and parked. [Tootle] and at least one of the other passengers exited the vehicle wearing hats and with bandanas over their faces. They brandished firearms and opened fire on Jones and Armstead. After the shooting stopped, [Tootle] and the other men fled the scene in the van, with [Tootle] driving. Neither Jones nor Armstead were armed at the time.

Police responded to the scene to find Armstead lying in the middle of the road. Armstead was declared dead at 8:58 p.m. Jones was shot a total of five times in the back, leg, arm, and hip. Police placed Jones in the back of a police cruiser and transported him to Einstein Hospital. Information that the shooters were driving a green van was broadcast over police radio as police continued to respond to the scene.

Officer [Tyrone] Broaddus, who was in his patrol car responding to the radio call regarding the shooting, observed a green van matching the description of the getaway vehicle. He followed the van to the parking lot of an apartment building, where it stopped. [Tootle] and another man then got out of the van and [Tootle] walked toward the back of the lot. Additional officers arrived, and [Tootle] was located and apprehended. No other individuals were apprehended at that time.

At the time of his arrest, [Tootle] gave police the false name of Brandon Harris. As [Tootle] was taken into custody, [he] asked the arresting officers: "Can I say my last good-byes to my cousin?" [Tootle] also asked how many people were shot and if anyone was killed. Michael Jordan, a witness to the shooting's aftermath and [Tootle's] flight in the van, was taken to where the van was located, where he identified the van as the vehicle he saw leaving the scene of the shooting. . . .

Police recovered two firearms. A loaded .40 caliber Glock with an extended magazine was recovered inside of [Tootle's] vehicle. [Tootle's] fingerprints were recovered from that Glock. Additionally, police recovered a .357 caliber six shot revolver, with six spent cartridge cases in the cylinder, approximately ten feet from where [Tootle] was apprehended. Police also recovered a cell phone from the vehicle which bore fingerprints from [Tootle's] thumb. Police recovered and identified eighteen .40 caliber fired cartridge cases. A bullet jacket and core recovered from

Armstead's head by the medical examiner matched the revolver recovered near [Tootle]. Bullets recovered from Armstead's torso, chest, and leg were consistent with the .40 caliber Glock having [Tootle's] fingerprint. In addition, all of the recovered .40 caliber fired cartridge cases were fired from the Glock. The clothing [Tootle] was wearing at the time of his arrest was seized and tested for gunpowder residue. Gunpowder residue was found on [Tootle's] black T-shirt and sweatpants.

Trial Court Opinion, 7/2/15, at 3-5 (citations & footnote omitted).

Tootle proceeded to a jury trial and was convicted of first-degree murder, criminal conspiracy, carrying a firearm without a license, carrying a firearm on the public streets of Philadelphia, and possessing an instrument of crime.[2] He was subsequently sentenced to an aggregate term of life without parole plus 24.5 to 52 years of incarceration. This court affirmed the judgment of sentence and our Supreme Court denied *allocatur*. **Commonwealth v. Tootle**, 3030 EDA 2014, at *5 (Pa. Super. Nov. 1, 2016), *allocatur denied*, 169 A.3d 559 (Pa. 2017).

Tootle filed the instant timely, counseled PCRA petition on May 18, 2018, raising several claims of ineffective assistance of trial and appellate counsel. The Commonwealth filed a motion to dismiss the petition and Tootle filed a response. The Commonwealth then filed a sur-reply to Tootle's response. The PCRA court issued a notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On August 1, 2019, the PCRA court

---

[2] 18 Pa.C.S. §§ 2502(a), 903, 6106, 6108, & 907.

dismissed the petition. Tootle timely appealed and he and the PCRA court have complied with Pa.R.A.P. 1925.[3]

## II.

Tootle raises a single issue on appeal: "Did the lower court abuse its discretion when it dismissed, without a hearing, [Tootle's] claim that counsel was ineffective in failing to present the testimony of the Commonwealth's DNA expert?" Tootle's Brief at 2. Tootle attached to his petition a DNA laboratory report he received from the Commonwealth in discovery prior to his trial. Petition for Post Conviction Relief, 5/18/18, Exhibit A. According to the report, the laboratory tested five swabs of different areas of the Glock handgun and four swabs of different areas of the revolver for DNA evidence. The lab recovered partial DNA profiles from two of the Glock swabs and one of the revolver swabs and concluded that Tootle was "excluded as a source of the DNA" in those swabs. *Id.*

---

[3] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (citation omitted). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Brown*, 161 A.3d 960, 964 (Pa. Super. 2017) (citations omitted).

The Commonwealth did not call the laboratory technician who performed the DNA analysis or attempt to introduce the DNA test results at trial. Tootle's counsel attempted to question the lead detective on the case regarding the DNA laboratory report but she testified that she had not seen the DNA report prior to trial. Notes of Testimony, 7/2/14, at 227-29. When Tootle again attempted to question the detective regarding the conclusions in the DNA report, the trial court sustained the Commonwealth's objection to the line of questioning. *Id.* at 245-46.

Tootle's argument is two-fold. First, he contends that the DNA report was substantive exculpatory evidence that he had not handled the firearms that were used in the shooting and would have allowed the jury to conclude that he was not one of the shooters. Second, he argues that this DNA evidence was more reliable than other kinds of evidence of his guilt presented at trial, such as the fingerprint evidence and eyewitness testimony. He argues that the jury could have credited the DNA analysis results as more scientifically valid than the fingerprint evidence[4] and that it would have further discredited eyewitness testimony from Christina Dorman.[5]

_____

[4] While Tootle assails the validity of the fingerprint evidence generally, he did not raise a claim of ineffectiveness challenging counsel's investigation or cross-examination regarding this evidence at trial.

[5] Dorman testified at trial that she had witnessed the shooting and identified Tootle as one of the shooters. She had known Tootle for a couple of years at the time and recognized him when he exited the green van even though he

"To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." **Commonwealth v. Sarvey**, 199 A.3d 436, 452 (Pa. Super. 2018). "[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." **Commonwealth v. Robinson**, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). We presume that counsel has rendered effective assistance. **See Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015).

To succeed on a claim that counsel was ineffective for failing to call a witness at trial, a PCRA petitioner must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

---

had a hat and bandanna covering his face. Notes of Testimony, 7/2/14, at 89-90. Dorman did not give an official statement on the night of the shooting because she was afraid for the safety of her family that lived in the neighborhood. She spoke to detectives and identified Tootle as one of the shooters two years later when this case was awaiting trial and she had recently been arrested for robbery. She testified that she had not been offered anything by the Commonwealth in exchange for her testimony. **Id.** at 92. Trial counsel cross-examined Dorman extensively regarding her motives for testifying against Tootle, her pending criminal charges, her delay in giving her statement, and the inconsistencies in her testimony. **Id.** at 104-09, 129-31, 146-48.

*Commonwealth v. Wantz*, 84 A.3d 324, 331 (Pa. Super. 2014) (citation omitted). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012) (quotations & citation omitted). When analyzing the prejudice prong under our standards for ineffectiveness, we must determine whether there is a reasonable probability that the outcome of the trial would have been different if the witness had testified. *Wantz*, *supra*, at 333-34.

In rejecting this claim, the PCRA court determined that the evidence against Tootle was overwhelming such that testimony regarding the DNA analysis of the two firearms would not have affected the outcome of the trial. PCRA Court Opinion, 7/1/2020, at 8-9. We agree. At trial, the Commonwealth presented testimony from three eyewitnesses who observed the green van involved in the shooting. One of the witnesses, Dorman, saw the shooting itself and was able to identify Tootle as one of the shooters because she had known him for several years. The second witness, Jones, was one of the victims of the shooting and recalled seeing the assailants pull up in a green van before the shooting. The third witness, Jordan, observed the green van driving away from the scene of the shooting after the gunshots ceased. He and Jones reported this description to law enforcement and police in the area immediately began looking for the vehicle.

Officer Broaddus testified that he observed a green van soon after the shooting and followed it to an apartment complex. He saw Tootle exit the vehicle and shortly thereafter placed him under arrest. Jordan was then transported to the apartment complex by police where he confirmed that the green van was the vehicle he had observed leaving the scene of the shooting. During his arrest, Tootle gave a false name and made several incriminating statements. He asked how many people had been shot, whether anyone was killed, and whether he could say his "last goodbyes" to his cousin. Notes of Testimony, 7/1/2014 at 135-36; 7/2/2014 at 69, 174-75.

Upon searching the van, officers recovered a cell phone and a Glock handgun. They also recovered a revolver approximately ten feet from where Tootle was arrested on the apartment complex grounds. Ballistics testing confirmed that both firearms were involved in the shooting. Bullets fired from each weapon were recovered from the victim's body and cartridge casings from the scene matched the Glock. In addition, Tootle's fingerprint was found on the Glock and on the cell phone that was found in the van. Tootle's shirt and pants also tested positive for gunshot residue.

Weighed against this evidence of Tootle's involvement in the shooting, the DNA analysis results would not have compelled a different result at trial. The report analyzed five swabs of different areas of the Glock handgun and four swabs of different areas of the revolver. The laboratory was only able to analyze partial DNA from three of these swabs, and in those cases it excluded

Tootle as a source of the sample. While these results provided proof that an unidentified individual had touched the firearms at some point, they do not conclusively prove that Tootle never handled the weapons. In light of the evidence that Tootle's fingerprint was recovered from the Glock, that the revolver was recovered outside near where Tootle was arrested, and the eyewitness testimony identifying him as one of the shooters, we cannot conclude that the DNA analysis results would have resulted in a different outcome at trial. Because Tootle cannot establish that he was prejudiced by trial counsel's failure to introduce this evidence, his ineffectiveness claim is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/21