J-S37025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW CORDERO | : | |
| | : | |
| Appellant | : | No. 244 EDA 2020 |

Appeal from the PCRA Order Entered December 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000654-2015

BEFORE: SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: Filed: December 24, 2020

Appellant Matthew Cordero appeals from the order dismissing his timely first Post Conviction Relief Act[1] (PCRA) petition. Appellant contends the PCRA court erred by dismissing his petition without an evidentiary hearing because a genuine issue of material fact existed as to whether her trial counsel was ineffective by failing to request a cautionary jury instruction regarding color crime scene photos showing the decedent's body. We affirm.

In resolving Appellant's direct appeal, this Court adopted the trial court's opinion and briefly summarized the facts of this case as follows:

On September 13, 2013, Appellant and his [paramour], Krista McDevitt, conspired to lure the decedent, Joseph Britton (McDevitt's former [paramour]), to a location in the Frankford neighborhood of Philadelphia, where Appellant and McDevitt

---

[1] 42 Pa.C.S. §§ 9541-9546.

planned to rob him. McDevitt successfully lured Britton to Frankford, but when she met Appellant to tell him, Appellant became jealous and enraged, approached Britton (who was waiting for McDevitt in a borrowed car), and struck him three or four times with an aluminum baseball bat, killing him. Appellant searched the car and Britton's pockets for drugs and money, but retrieved only $1. Appellant discarded the car keys and then boasted to others of the crime and warned them not to report him to the police.

**Commonwealth v. Cordero**, 2017 WL 4509818, at *1 (Pa. Super., filed Sept. 27, 2017) (unpublished mem.), *appeal denied*, 182 A.3d 989 (Pa. 2018).

Police arrested Appellant on October 14, 2014 and charged him with murder, robbery, conspiracy, and possession of an instrument of crime (PIC)[2]. Appellant's jury trial began on September 26, 2016.

At trial, the Commonwealth's case included the presentation of twenty-six crime scene photos, in color, and which included images of the decedent's body as it was found. N.T. Trial, 9/27/16 at 302. Appellant's trial counsel did not object to the photos. **Id.** Acknowledging the spectators in the gallery, the trial court warned, "I will just once again tell people that some of these photographs will show the decedent as he was in the car, so if anyone wants to step outside you may want to do that now. There are some close-up photographs." **Id.**

Officer William Trenwith, who took the photos, testified as to the contents of each image one by one. **Id.** at 303-14. As the officer discussed the photographs of the decedent's injuries, an unnamed spectator became

---

[2] 18 Pa.C.S. §§ 2502, 3701(a)(1), 903, and 907(a), respectively.

upset. The trial court addressed her, "Ma'am, you have to step out and [to the Commonwealth] you don't need to blow this one up." *Id.* at 311. A few moments later, the trial court again noted for the benefit of the gallery, "People, again, the last few photographs are more gory. So if you don't want to look at them, please step out now." *Id.* at 312. Outside of the presence of the jury, the trial court stated:

> All right. Before we adjourn for the day, when I was describing the photographs, when I used the word gory, I just want the record to be clear. To me, they're not gory in the sense that I thought they were unduly prejudicial or anything like that, but for family members I used that term so that they understood that there was going to be blood shown and I know it's always hard for family members to view these photographs.

*Id.* at 339.

In his closing argument, Appellant's trial counsel acknowledged the graphic nature of the photographs as follows:

> And I saw some of you when those crime scene photos went up. Some of you averted your eyes. Understandable. It's not pleasant to look at. . . . It's hard.
>
> But Her Honor is going to address that with you. She's going [to] tell you right up front . . . that you cannot base your verdict on sympathy for or against anybody, and I think you know that that's just common sense.

N.T. Trial, 9/29/16 at 19. Appellant's trial counsel continued to argue that, although this was a terrible killing, the Commonwealth had not proved beyond a reasonable doubt that Appellant killed the decedent. *Id.* at 16. Specifically, Appellant's trial counsel challenged the credibility of the Commonwealth's

witnesses who implicated Appellant as the person who killed the decedent. *Id.* at 20-48.

Appellant's counsel did not request a cautionary jury instruction regarding the photographs of the decedent at the crime scene. However, the trial court, in part, charged the jury as follows: "[y]our determination of the facts should not be based on empathy for or prejudice against the defendant or the crime. . . ." *Id.* at 100.

On September 30, 2016, the jury found Appellant guilty of first-degree murder, conspiracy, robbery, and PIC. That same day, the trial court sentenced Appellant to a mandatory term of life without parole for first-degree murder, concurrent terms of five to ten years' imprisonment for conspiracy and robbery, and one to two years' imprisonment for PIC. Appellant timely appealed, and this Court affirmed his judgment of sentence on September 27, 2017. Our Supreme Court denied Appellant's petition for allowance of appeal on March 15, 2018.

Appellant timely filed the instant PCRA petition *pro se* on May 31, 2019. The PCRA court appointed counsel and directed PCRA counsel to file an amended petition. On October 21, 2019, PCRA counsel filed an amended petition and motion for discovery seeking the color photographs used at trial. Mot. for Discovery, 10/21/19. The PCRA court provided the requested photographs to PCRA counsel on October 30, 2019.

On November 7, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice stating that Appellant's issues were without merit. Rule 907 Notice, 11/7/19.

- 4 -

Appellant did not file a response. The PCRA court dismissed Appellant's petition on December 12, 2019. Appellant filed a timely notice of appeal on January 8, 2020.

Appellant raises one issue:

Whether the PCRA [c]ourt erred in dismissing the Appellant's petition under the [PCRA] where trial counsel was ineffective for failing to request a jury instruction under Section 3.18 (Crim.) Inflammatory Photographs when the color photographs of the decedent's corpse were sufficiently disturbing to prejudice the jury and to cloud an objective assessment of guilt or innocence?

Appellant's Brief at 6.

Appellant argues that trial counsel was ineffective because he failed to request "a cautionary or final instruction . . . admonishing the jury not to let the disturbing photographs of the decedent's head injuries stir their emotions to the prejudice of" Appellant. *Id.* at 14. Appellant contends that his ineffective assistance of counsel claim has arguable merit because the images of the decedent's injuries were so gruesome that the jury could not objectively determine Appellant's guilt or innocence. *Id.* at 20. Appellant emphasizes that the trial court referred to the images as "gory" and directed the Commonwealth not to enlarge the images to avoid upsetting the gallery. *Id.* at 19.

Further, Appellant argues that trial counsel had no reasonable basis for failing to request the instruction because he highlighted the emotional impact of the photographs in his closing argument. *Id.* at 20. According to Appellant, because counsel witnessed the courtroom outburst and heard the trial court

describe the photos as gory, counsel should have known "that there was at least the possibility that the photos could inflame the passions of at least one juror and prevent a juror from objectively deciding the issue of guilt." *Id.* at 21. Appellant asserts that "[n]o competent counsel would have chosen not to request the [inflammatory photograph] instruction under 3.18 under the circumstances as counsel experienced them in the courtroom." *Id.*

Finally, Appellant argues that he was prejudiced by trial counsel's ineffectiveness because "there is a reasonable probability that one of more jurors' emotions were affected" by having to view the photos. *Id.* As a result of counsel's failure, Appellant contends that the jury "was not properly cautioned and instructed after seeing the photos." *Id.* Accordingly, Appellant requests a new trial, or in the alternative, an evidentiary hearing for trial counsel to testify regarding his failure to request a cautionary instruction. *Id.* at 24.

The Commonwealth responds that the trial court properly denied Appellant relief.[3] Commonwealth's Brief at 9. The Commonwealth asserts that "all parties agreed that the photographs . . . were not upsetting enough to prejudice a jury." *Id.* at 17. The Commonwealth, in relevant part, maintains that Appellant cannot establish the prejudice necessary to support his claim because the trial court indicated that it did not find the photos unduly

_____

[3] The Commonwealth also asserts that Appellant is precluded from obtaining relief because he did not include any certification to support his claim. Commonwealth's Brief at 9-10.

prejudicial and gave the standard jury charge. *Id.* at 18. According to the Commonwealth, the trial court's jury charge communicated the sentiment of Section 3.18 of the Standard Jury Instructions. *Id.* at 17. The Commonwealth concludes that Appellant cannot show that counsel's claimed ineffectiveness resulted in prejudice to Appellant due to the overwhelming evidence of guilt presented at trial. *Id.* at 20-21.

In its opinion dismissing Appellant's petition, the PCRA court concluded that the photographs were not sufficiently disturbing to prejudice the jury against Appellant. PCRA Ct. Op. 12/12/19, at 6. The PCRA court determined that the nature and extent of the decedent's injuries "would not have been readily deducible from black and white photographs." *Id.* at 7. The PCRA court acknowledged that referring to the photographs as 'gory' in comments directed toward to gallery "may have been inartful" but notes that the description should not be construed to have prejudiced the jury. *Id.* at 8. Accordingly, the PCRA court concluded that Appellant "presents no evidence that the jurors . . . had their passions inflamed by the admission of the crime scene photos." *Id.* Significantly, the PCRA court pointed out that trial counsel, in his closing argument, acknowledged that the jury would be instructed not to base their verdict on sympathy or prejudice for or against any person, and that the trial court issued an instruction not to consider their personal feelings about the nature of the crime. *Id.* The PCRA court concluded that Appellant,

therefore, failed to demonstrate trial counsel's lack of a reasonable strategy or prejudice.

We set forth the applicable standard of review in **Commonwealth v. Sandusky**, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) as follows:

> Initially, we note that our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

> Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Sandusky*, 203 A.3d at 1043-44 (citations omitted and formatting altered).

"Failure to prove any prong of this test will defeat an ineffectiveness claim."

*Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (citation omitted).

If a claim fails under any element of the test, the court may proceed to that element first.  *Commonwealth v. Lesko*, 15 A.3d 345, 374 (Pa. 2011) (citation omitted).

Initially, we note that trial counsel is presumed effective. *Commonwealth v. Philistin*, 53 A.3d 1, 10 (Pa. 2012).  Further, the "decision whether to seek a jury instruction implicates a matter of trial strategy." *Lesko*, 15 A.3d at 401 (citation omitted).  Our Supreme Court has explained

> [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.  A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012) (citations and internal quotation marks omitted).

With respect to a PCRA hearing,

> [i]t is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in

his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (citations and some formatting omitted), *appeal denied*, 218 A.3d 380 (Pa. 2019).

Although the parties do not contest the admissibility of the photographs, we initially acknowledge that our Supreme Court has held that before admitting photographs,

> a trial court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Pruitt*, 951 A.2d 307, 320 (Pa. 2008) (citation omitted and formatting altered). The *Pruitt* Court continued: "[a]lthough the possibility of inflaming the passions of the jury is not to be lightly dismissed, a trial judge can minimize this danger with an appropriate instruction, warning the jury member not to be swayed emotionally by the disturbing images, but to view them only for their evidentiary value." *Id.*

The suggested standard criminal jury instruction on inflammatory photographs states:

> **3.18** – INFLAMMATORY PHOTOGRAPHS
>
> 1. This photograph was admitted in evidence for the purpose of [showing the nature of the wounds received by the deceased] [showing conditions at the scene of the alleged crime] [helping you understand the testimony of the witnesses who referred to it] *[give other specific purpose]*.

- 10 -

2. It is not a pleasant photograph to look at. You should not let it stir up your emotions to the prejudice of the defendant. Your verdict must be based on a rational and fair consideration of all the evidence and not on passion or prejudice against the defendant, the Commonwealth, or anyone else connected with this case.

Pa. SSJI (Crim) 3.18.

Appellant argued that he was not the killer. N.T. Trial, 9/29/16 at 20-46. Specifically, in support of its theory that Appellant was the killer, the Commonwealth offered the testimony of Ian Pawlowic, the friend who loaned Appellant an aluminum bat to carry out a robbery. N.T. Trial, 9/27/16 at 118-19. Pawlowic testified that Appellant took the bat and returned about thirty minutes later. *Id.* at 121. Appellant confessed to Pawlowic that he killed someone and invited Pawlowic to go with him back to the crime scene. *Id.* Pawlowic returned to the scene with Appellant to search the decedent's car for money or drugs and ran back to Pawlowic's home after they only found a dollar. *Id.* at 124. At some point, Appellant returned the bat to Pawlowic and instructed him to hide it. *Id.* at 126. Pawlowic further testified that he could see the decedent's car from his front porch and Appellant returned while the police were on scene to watch "the aftermath of the chaos." *Id.* at 129. Pawlowic stated that months after the murder, Appellant threatened to kill him if he told anyone what happened. *Id.* at 131.

McDevitt, Appellant's paramour at the time of the murder, testified that she helped Appellant set up the decedent to be robbed. N.T. Trial, 9/28/16 at 23. She expected Appellant to rob the decedent for money and heroin. *Id.*

McDevitt explained that she first met with the decedent and asked him to wait while she got her things. *Id.* at 27. She then went to find Appellant in a nearby park. *Id.* at 29. At that time, she observed that Appellant had an aluminum bat with him and he became enraged when he learned that she had used drugs with the decedent. *Id.* at 30-31. According to McDevitt, she went to a friend's home where she and Appellant had been residing, and Appellant arrived about thirty minutes later and confessed to killing the decedent. *Id.* at 33. That friend and her minor son, D.C., then went to see the scene. *Id.* at 33-34.

D.C. also testified at trial and identified Appellant, who he knew as "Shark," as the person who confessed to killing the decedent. N.T. Trial, 9/27/16 at 230. Specifically, D.C. indicated that he heard Appellant discussing the robbery plan earlier in the evening. *Id.* at 232. D.C. explained that Appellant was sweaty when he returned and had some "blood type stuff" on his clothes. *Id.* at 234. D.C. testified that he and his mother then walked around the corner to the crime scene and saw the decedent's body in the car. *Id.* at 236. D.C. explained that Appellant warned them not to tell the police what happened. *Id.* at 240.

Appellant's trial counsel thoroughly cross-examined Pawlowic and McDevitt regarding their involvement in the homicide, as well as the charges they were facing and cooperation agreements, and impeached D.C. using D.C.'s prior statement to police. *See* N.T. Trial, 9/27/16 at 187 and 266; *see also* N.T. Trial, 9/28/16 at 153. In his closing argument, Appellant's trial

counsel focused on challenging the credibility of Pawlowic, McDevitt, and D.C. *See* N.T. Trial, 9/29/16 at 20-46. Appellant's trial counsel contended that the Commonwealth's witness, D.C., was not credible because he initially lied to police to protect Appellant. *Id.* at 26. Further, trial counsel argued that McDevitt and Ian Pawlowic, both co-conspirators, were falsely accusing Appellant in hopes of avoiding life sentences for their participation in the crime. *Id.* at 39.

As noted above, Appellant's trial counsel only mentioned the photos in passing in his closing argument, noting that while the photos were "not pleasant" to look at, the jury should not base its decision on sympathy. *Id.* at 19. Appellant's trial counsel observed that the trial court would instruct the jury, and the trial court ultimately issued an instruction stating that their decision should not be based on empathy for or prejudice against the defendant or the crime. *Id.*

Following our review, we agree with the PCRA court that Appellant has not established that he was prejudiced by trial counsel's failure to request the suggested jury instruction regarding inflammatory photographs. *See Lesko*, 15 A.3d at 374. Specifically, as noted by the PCRA court, we agree that Appellant has failed to present evidence that the jurors' passions were inflamed by the admission of the crime scene photos such that they were not able to examine the trial evidence as neutral arbiters of the facts. PCRA Ct. Op. at 8. The PCRA court acknowledged the exceeding difficulty for family members to see photographs of their loved one's body evidencing violent

injuries in the context of a homicide trial, and that the court's description of the photographs as "gory" may have been inartful. *Id.* Moreover, the PCRA court maintains that its suggestion that some spectators may desire to leave the courtroom reflected the court's consideration for their well-being while effecting orderly and efficient management of the jury trial. *Id.*

Moreover, Appellant has not established that it was reasonably probable that Appellant would have received a different result had counsel requested the instruction regarding inflammatory photographs. *See Sandusky*, 203 A.3d at 1044. Accordingly, we conclude that Appellant has failed to establish that the absence of SSJI 3.18 impaired the ability of the jury to fairly determine the issue of Appellant's guilt as presented at trial. *See Fears*, 86 A.3d at 804. Accordingly, there is no genuine issue of material fact to be considered, and the PCRA court did not abuse its discretion by not convening an evidentiary hearing. *See Maddrey*, 205 A.3d at 328. For the reasons herein, we affirm the PCRA court's order dismissing Appellant's PCRA petition.

Order affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/20

- 14 -