J-S15033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD P. DEIHL | : | |
| | : | |
| Appellant | : | No. 589 MDA 2022 |

Appeal from the PCRA Order Entered March 17, 2022
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-CR-0000496-2019

BEFORE:  BOWES, J., STABILE, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED:  OCTOBER 26, 2023**

Donald P. Deihl ("Deihl") appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court summarized the factual background of this appeal as follows:

> [L.W., born in September 2003,] reported [an] assault to the Pennsylvania State Police around Thanksgiving of 2018. [L.W.] was only [fourteen] years old when she and [Deihl, then thirty-six years old,] had sexual relations in a camper on his parents' property.  [Deihl] had been a  longtime friend of [L.W.]'s family as well as a father-figure to her.  [L.W.] explained that they had been painting the roof of the camper.  They went inside the camper to take a break, at which point they had sex.  She eventually told her cousin about the incident, which led to [L.W.]'s mother learning of it as well.  It was then that the Pennsylvania State Police became involved.

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

The Pennsylvania State Police arranged for [L.W.] to call [Deihl]. The call was recorded.[2] . . .

PCRA Court Opinion, 10/19/22, at 2.

During the phone call recorded by the state police ("the recorded phone call"), L.W. led Deihl to believe she was pregnant. *See id*.; *see also* N.T., 8/19-20/20, at 104-05; Commonwealth's Exhibit 21 at 1.[3] Deihl responded that he could not have impregnated her because "that's been months ago" and she "had [her] period since then." Commonwealth's Exhibit 21 at 1-2. Additionally, Deihl asked whether L.W. was sexually active with her boyfriend. *See id*. at 2. L.W. responded that Deihl was "the only one [she] slept with and had sex with." *See id*. Deihl did not deny this assertion or offer an explanation. *See id*. at 1, 2.

Deihl later gave a statement to the state police. *See* N.T., 8/19-20/20, at 269; *see also* Commonwealth's Exhibit 24 at 1.[4] He denied having sex with L.W. and explained that L.W. had told him she had "mess[ed] around" with him, sexually, when he was sleeping. *See* Commonwealth's Exhibit 24 at 3-4.

Deihl retained counsel ("trial counsel") and proceeded to a jury trial on charges on indecent assault, corruption of minors, and statutory sexual assault. The Commonwealth presented testimony from L.W., L.W.'s cousin,

_____

[2] *See* 18 Pa.C.S.A. § 5704(2).

[3] Commonwealth's Exhibits 21 was a transcript of the recorded phone call.

[4] Commonwealth Exhibit 23 was a transcript of Deihl's statement to the state police.

and the investigating Pennsylvania State Police trooper. The Commonwealth also played the recorded phone call to the jury. *See* N.T., 8/19-20/20, at 105. Deihl presented testimony from his mother, L.W.'s stepfather and mother, and other character witnesses. Deihl also testified and maintained that L.W. had told him she had touched him sexually when he was sleeping. *See id*. at 220. He explained that during the recorded phone call, he thought L.W. insinuated he impregnated her because she told him she had touched him when he was asleep. *See id*. at 226.

In addition to L.W.'s testimony that Deihl had intercourse with her, the Commonwealth presented testimony that Deihl gave a condom to L.W. at her fifteenth birthday party, which occurred approximately two months after the assault and two months before L.W. reported the assault to the state police.[5]

The jury found Deihl guilty of all charges, and, in November 2020, the trial court sentenced Deihl to an aggregate term of one to five years of incarceration. Deihl timely filed post sentence motions, which the trial court partially dismissed in January 2021. Diehl did not attempt to take a direct appeal, but in January 2022, timely filed the instant PCRA petition alleging

---

[5] Specifically, the Commonwealth elicited L.W.'s testimony that Deihl gave her a keychain with a condom in it. *See* N.T., 8/19-20/20, at 37. During the defense's case, L.W.'s stepfather and mother described the condom as a gift to L.W.'s stepfather. *See id*. at 164, 189. Deihl denied ever giving L.W. a keychain with a condom. *See id*. at 280. During the Commonwealth's rebuttal case, L.W.'s grandmother testified that Deihl gave the keychain and condom to L.W. *See id*. at 310.

trial counsel's ineffectiveness.[6]  ***See*** PCRA Petition, 1/4/22, at unnumbered 3-4.

The PCRA court held a hearing at which L.W.'s sister, Deihl's mother, Deihl, and trial counsel testified.  In relevant part, L.W.'s sister, J.W., testified that before trial, L.W. told J.W. that Deihl did not do anything to her.  ***See*** N.T., 3/14/22, at 5.  Deihl's mother testified she watched Deihl and L.W. when they were together on her property and did not see them acting inappropriately.  ***See id***. at 11.  Deihl testified he was surprised when at trial, L.W.'s grandmother stated he gave L.W. a condom at L.W.'s birthday party and trial counsel refused his request to challenge the testimony.  ***See id***. at

_____

[6] Deihl's present counsel entered his appearance after sentencing and filed the post-sentence motions.  Present counsel alleged the ineffectiveness of Deihl's prior counsel ("trial counsel") and challenged the weight of the evidence.  The trial court dismissed the post-sentence claims of ineffective assistance of counsel; however, the court did not expressly deny the remaining weight of the evidence claim or enter an order memorializing the withdrawal of the remaining post-sentence motion.  ***See*** Order 1/22/21. There is no indication that the clerk of the court issued an order formally denying the post-sentence motion by operation of law.  ***See*** Pa.R.Crim.P. 720(B)(3)(a), (c); ***cf. Commonwealth v. Borrero***, 692 A.2d 158, 160 (Pa. Super. 1997) (quashing a direct appeal where because the trial court did not finalize the judgment of sentence by denying the defendant's post-sentence motion and the clerk of the court did not issue an order denying the post-sentence motion by operation of law); ***Commonwealth v. Williams***, 215 A.3d 1019, 1022-23 (Pa. Super. 2019) (noting a petitioner may only file a PCRA petition after the waiver or exhaustion of his direct appeal rights). Despite these irregularities, it is clear that Deihl's judgment of sentence should have become final when the time for ruling on the post-sentence motions expired.  ***See*** Pa.R.Crim.P. 720(B).  Furthermore, Deihl filed his PCRA petition within one year of the partial denial of his post-sentence motions and asserted he "resolved to proceed with a PCRA petition."  PCRA Petition, 1/4/22, at 2 (unnumbered).  Under these circumstances, we consider Deihl's judgment of sentence final and his PCRA petition timely.

14-15. Trial counsel testified in defense of her trial decisions, although she asserted she should have objected to L.W.'s grandmother's testimony about Diehl giving L.W. a condom at her birthday party as improper Pa.R.E. 404(b) evidence. *See id*. at 23, 28. The PCRA court denied relief on March 17, 2022, and Deihl timely appealed.[7] Both Deihl and the court complied with Pa.R.A.P. 1925.

Deihl raises the following issue for our review:

1. Whether the [PCRA c]ourt erred in denying [his PCRA petition]; specifically [where]:

> a. [Deihl] introduced a new witness that did not get called to testify at trial and served to impeach the alleged victim's credibility.
>
> b. [Deihl] argued that evidence of a party was a prior bad act and should have been excluded at trial. Trial counsel conceded that she should have objected to the admission of this testimony, but did not do so.
>
> c. [Deihl] also showed that [his] mother had exculpatory information showing that the contact between Appellant and victim was not sexual, but was never asked this information at trial. . . ..

Deihl's Brief at 4.

Our standard of review of an order dismissing a PCRA petition is well-settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the

---

[7] The thirtieth day following the March 17, 2022 entry of the order denying PCRA relief fell on a Saturday, and Deihl filed his notice of appeal on the following Monday. *See* 1 Pa.C.S.A. § 1908.

record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief."

***Commonwealth v. Wholaver***, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted).

Generally, to prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate:

(1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotations omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." ***Commonwealth v. Smith***, 995 A.2d 1143, 1151 (Pa. 2010) (internal citation omitted).

Deihl's first issue concerns trial counsel's decision not to call L.W.'s sister, J.W., to testify at trial.

A claim that counsel was ineffective for failing to call a potential witness requires the petitioner to establish: (1) the witness existed; (2) the witness was available to testify; (3) counsel knew of, or should have known of, the witness; (4) the witness was willing to testify; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *See Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012). The failure to call a witness, other than the defendant, involves a matter of trial tactics. *See id*. at 1109; *Commonwealth v. Brown*, 18 A.3d 1147, 1158 (Pa. Super. 2011) (distinguishing trial counsel's authority to make tactical decisions from a defendant's right to exercise or waive trial rights such as the defendant's decision to testify). The petitioner bears the burden of showing trial counsel had no reasonable basis for failing to call a particular witness. *See Commonwealth v. Small*, 980 A.2d 549, 560 (Pa. 2009).

Deihl asserts he established: (1) the proposed witness, J.W., existed; (2) J.W. was available to testify; (3) trial counsel knew of J.W.'s existence; (4) J.W. was willing to testify for the defense; and (5) the absence of J.W.'s testimony was so prejudicial as to have denied him of a fair trial. Deihl acknowledges trial counsel's explanations for declining to call J.W. but argues "he should have been part of th[e] decision . . . not to call an important witness." Deihl's Brief at 10-11.

The PCRA court analyzed this issue as follows:

> Trial counsel decided that calling [J.W.] to testify would hurt [Deihl's] defense more than it would help. Her versions of the supposed fabrication had been inconsistent during their interviews in preparation for trial. [Trial counsel] believed that [J.W.] would not be able to withstand cross-examination. Furthermore, given the poor state of the relationship between the two sisters, trial counsel was concerned the jury might think that the defense was concocting stories about [L.W.]. Finally, [trial counsel] felt that the testimony concerning the veracity of [L.W.]'s allegations from [L.W.]'s own mother would be damning enough to the Commonwealth's case without the risks associated with having [J.W.] testify.

PCRA Court Opinion, 10/11/22, at 4 (footnotes omitted).

Following our review, we discern no abuse of discretion or error of law in the PCRA court's reasoning. Trial counsel testified that she met with J.W., who was thirteen years old at the time of trial. *See* N.T., 3/14/22, at 18-19. Trial counsel discussed J.W.'s proposed testimony in the presence of other adults, and she also questioned J.W. alone with a critical eye toward her viability as a witness. *See id*. at 18-19, 29. After meeting with J.W. alone, trial counsel determined that calling J.W. would be more harmful than beneficial to the defense. *See id*. at 19. Trial counsel explained that when speaking with J.W. alone, J.W. was very emotional and inconsistent about how she learned of L.W.'s alleged recantation. *See id*. at 19, 28. Trial counsel noted there was evidence that J.W. and L.W. had a poor relationship, and presenting J.W. as a witness could lead the jury to believe that J.W. concocted evidence against L.W. *See id*. at 20. Trial counsel also stated J.W. appeared in court for the trial dressed in a "little romper suit" with high heels, which

trial counsel thought would be "a poor optic" for the jury. *Id*. at 19-20. Based on the foregoing, we conclude there was ample record support for the PCRA court's conclusions. We agree with the PCRA court that trial counsel stated reasonable bases for her tactical decision not to call J.W. as a witness. Thus, Deihl's first issue merits no relief. *See Sneed*, 45 A.3d at 1108-09; *Small*, 980 A.2d at 560; *see also Brown*, 18 A.3d at 1158.

In his second issue, Deihl asserts that trial counsel was ineffective for failing to object to testimony based on Pa.R.E. 404. As stated in his PCRA petition, this claim involved Deihl's assertion that,

> [L.W.'s grandmother] testified as a rebuttal witness at trial as to prior events involving [Deihl] that allegedly occurred in September 201[8] wherein [Deihl] allegedly gave the victim a condom at her birthday party. These prior events could have been considered prior bad acts. There was not a 404(b) motion filed in respect to these events. Trial [c]ounsel should have objected to the admission of this testimony, yet failed to do so. The admission of this testimony affected the verdict of the jury. Even if admissible, [Deihl] would have testified that this event did not occur. Trial counsel did not recall [Deihl] to rebut this testimony. This affected the verdict.

PCRA Petition, 1/4/22, at unnumbered 3 (record citation omitted). Similarly, at the evidentiary hearing, Deihl focused his testimony on L.W.'s grandmother's rebuttal testimony, the alleged lack of notice of this testimony, and his assertion that he could have denied the alleged incident. *See* N.T., 3/14/22, at 14-15.

Deihl's claim, as stated in his PCRA petition and developed at the evidentiary hearing, misconstrued the trial record. The testimony about Deihl

giving a condom to L.W. at her birthday party was not limited to L.W.'s grandmother's testimony. Rather, L.W. testified about the incident on direct and cross examination. *See* N.T., 8/19-20/20, at 37, 71-72 (cross-examining L.W. about Deihl giving a "jokey" gift along with other gifts, including a book). Additionally, L.W.'s stepfather, during cross-examination, and L.W.'s mother, during direct and cross-examination, testified that Deihl gave a condom to L.W.'s stepfather and only joked about giving it to L.W. *See id*. at 164, 177, 189. Contrary to Deihl's claims, he also had an opportunity to and, in fact, denied the entire incident. *See id*. at 280. Thus, Deihl's claim that trial counsel was ineffective for failing to object to the rebuttal testimony from L.W.'s grandmother is wholly frivolous. To the extent Deihl attempts to broaden the focus of his ineffectiveness claim concerning the admission of all testimony about his giving L.W. a condom at her birthday party, we could find Deihl's issue waived. *See* Pa.R.A.P. 302(a).

In any event, we would discern no basis to disturb the PCRA court's ruling that Deihl failed to establish prejudice. *See* PCRA Court Opinion, 10/11/22, at 4-5 (concluding that Deihl did not establish prejudice because the trial did not involve a case of "he-said-she-said"). As noted by the PCRA court, the trial evidence was not limited to L.W.'s testimony that the assault occurred but included Deihl's own statements during the recorded phone call. *See id*. Those statements included his implied admission to having had intercourse with L.W. when he stated L.W. could not be pregnant because she had her "period since then," as well as his failure to deny the possibility that

he could have fathered a child with L.W.  ***See id***.; ***see also*** Commonwealth's Exhibit 21 at 1-4.  We acknowledge Deihl's attempts at trial to explain his statements during the recorded phone call.  However, the evidence about his giving a condom to L.W. at her birthday party did not prejudice a fair determination of the critical issues at trial: the credibility of Deihl's and L.W.'s testimony concerning the assault and Deihl's attempted explanations for his statements in the recorded phone call.  Accordingly, Deihl did not establish a reasonable possibility that the outcome at trial would have been different had he had notice of the testimony about his giving a condom to L.W. or had trial counsel objected to this testimony.  Thus, Deihl's second issue fails.  ***See Johnson***, 139 A.3d at 1272.

In his third and final issue, Diehl contends that trial counsel was ineffective for failing to elicit additional testimony from his mother, whom the defense called as a witness at trial.  He contends that his mother would have testified that she would watch over Deihl and L.W. when they were on her property and saw nothing inappropriate in their interactions.  Deihl claims that the absence of this testimony resulted in prejudice because it would have demonstrated the absence of grooming behaviors typically associated with sexually assaulting a minor.

The PCRA court rejected this claim and concluded that Deihl failed to establish prejudice. **See** PCRA Court Opinion, 10/11/22, at 6-7. We agree.[8] The proposed testimony did not establish Deihl's mother constantly watched Deihl and L.W., nor did Deihl's mother suggest she would watch them when they were inside the trailer where the assault occurred. **See** N.T., 3/14/22, at 9-12. Additionally, as noted by the PCRA court, upon cross-examination at the evidentiary hearing, Deihl's mother also volunteered potentially harmful testimony, namely, that she spied on Deihl and L.W. when they were in the barn out of her concern they may have been secretly engaging in inappropriate activities. **See** PCRA Court Opinion, 10/11/22, at 6 n.11; **see also** N.T., 3/14/22, at 11. Thus, the record supports the PCRA court's determination that Deihl did not prove a reasonable possibility that the outcome of trial would have been different.

We add that evidence concerning grooming behaviors was not at issue at trial. L.W. did not testify that Deihl acted inappropriately with her before the assault. **See** N.T., 8/19-20/20, at 25-26, 63 (discussing L.W.'s relationship with Deihl before the assault, noting that Deihl did nothing of a sexual nature to her before the assault, but testifying they did joke around on

_____

[8] Our review of the record, however, constrains us to disagree with the PCRA court's finding that the proposed testimony was similar to Deihl's mother's trial testimony. At trial, trial counsel did not elicit Deihl's mother's proposed testimony that she watched Deihl and L.W. closely and did not see Deihl act inappropriately with L.W.. **See** N.T., 8/19-20/20, at 136-37 (indicating Deihl's mother's testimony that she often saw Deihl and L.W. on her property and she would be outside gardening or checking on her animals).

adult topics).  Rather, as stated above, the critical issues at trial were L.W.'s testimony about the assault, Deihl's own statements during the recorded phone call, implicitly admitting to sexual contact with L.W. and failing to deny having intercourse with L.W., and Deihl's own explanations for his statements. Additional testimony that Deihl's mother did not see Deihl and L.W. act inappropriately would not have changed the outcome of trial.  Accordingly, we agree with the PCRA court that Deihl's third and final issue fails because he did not prove prejudice.  ***See Johnson***, 139 A.3d at 1272.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/26/2023