J-S17016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY O. GUDINO | : | |
| | : | |
| Appellant | : | No. 2549 EDA 2024 |

Appeal from the PCRA Order Entered August 29, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001521-2016

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 25, 2025**

Anthony O. Gudino appeals from the order dismissing his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Gudino claims the court erred in denying his PCRA petition that raised a claim of ineffective assistance of counsel. We affirm.

At Gudino's trial for the death of his daughter, the Commonwealth presented testimony from an expert in forensic pathology, Dr. Barbara Bollinger. Gudino's trial counsel did not present expert testimony to rebut Dr. Bollinger's testimony. A jury convicted Gudino of third-degree murder, endangering the welfare of a child, and recklessly endangering another person.

The court sentenced Gudino to 23½ to 47 years' incarceration. We affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. **Commonwealth v. Gudino**, No. 787 EDA 2020, 2021 WL 653031

(Pa.Super. filed Feb. 19, 2021), *appeal denied*, 263 A.3d 245 (Table) (Pa. filed Sept. 16, 2021).

Gudino filed the instant, timely petition, his first, in July 2022. The court appointed counsel who filed an amended PCRA petition. The petition raised a claim that trial counsel was ineffective "for failing to rebut the Commonwealth's forensic evidence." Amended Petition for Post Collateral Relief from Trial, filed 1/3/23, at ¶ 28.

The court held an evidentiary hearing where pretrial counsel testified. Pretrial counsel explained that "[t]he defense was that it is inappropriate, unfair, and unreasonable to charge [Gudino] simply because he was the person who took the child to the emergency room when the child was in distress," considering other people had also been in contact with the child. N.T. 4/3/23, at 20. He testified that he spoke with Dr. Jack Daniel, who suggested other experts for counsel to consult. *Id.* at 11. He also consulted Dr. Jonathan Briskin, a forensic pathologist. He said Dr. Briskin reviewed the evidence in the case, including Dr. Bollinger's report and told counsel that he believed "his testimony would simply bolster the Commonwealth's case[.]" *Id.* at 12, 13, 22. Counsel explained that Dr. Briskin "posited the theory that, perhaps, [Gudino] or some other person had fallen down onto the child that very morning." *Id.* at 13. Counsel said he also consulted a third potential expert, but "she was disinclined to help[.]" *Id.* at 11, 15. Pretrial counsel agreed that trial counsel conducted a full and extensive cross-examination of the Commonwealth's expert witness and cited multiple studies, articles,

theories, and other literature addressing the cause of injury to the child. *Id.* at 22.

PCRA counsel submitted a brief in support of the ineffectiveness claim and filed a ***Turner/Finley***[1] letter for Gudino's other issues. *See* Brief in Support of Amended PCRA Petition, filed 5/10/23. The court ordered counsel to file either an amended PCRA petition or a ***Turner/Finley*** letter. *See* Order, filed 8/16/23. Counsel filed an amended petition asserting only the claim that trial counsel was ineffective for not calling an expert witness to rebut the Commonwealth's evidence. Second Amended PCRA Petition, filed 1/5/24.

At a second evidentiary hearing, trial counsel testified. Trial counsel explained that the court appointed him late in the case, and the defense's theory of the case had been developed. N.T., 7/8/24, at 12-13. His involvement included "reviewing the forensics and getting . . . medical records from the hospital . . . where th[e] child had been born." *Id.* at 13. Counsel also testified regarding his cross-examination of the Commonwealth's expert witness.

> Q [Commonwealth]: When you specifically recall, was it you who actually examined or cross-examined Dr. Bollinger?
>
> A [Trial Counsel]: Yes.
>
> Q: And for the record, what was Dr. Bollinger's purpose in the case for the Commonwealth to the best of your recollection?

---

[1] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

A: Her purpose was basically to establish that the Commonwealth had – would be able to meet its burden beyond a reasonable doubt that Mr. Gudino had through some mechanism brought about the death of the child. And I'm trying to remember. It's been quite a few years. I've done a lot of trials in the meantime, but I do remember – I usually ask forensic pathologists accidental, incidental or intentional. And I think I got her a little bit angry.

Q: Okay. Do you recall a part in the trial when Dr. Bollinger was testifying that she had done some demonstrative evidence with a baby doll; is that correct? Was it a doll?

A: It was more than demonstrative. She got a little bit, I think a little bit irritated at the line of questioning, and I remember this one where she smashed the head against the baluster of the front of the bar there and said this is how it happened. I said, Okay. So now you're showing us how it didn't happen. I mean, she could not, as far as I recall directly, definitively say what was the instrumentality and what was the cause.

Q: Now, I want to back up just a moment to that testimony because the record does not show that at trial. You were candid with me – and I want to disclose this to the Court that you had recalled this. Was there an objection lodged by the defense regarding the demonstrative way in which the force was demonstrated by Dr. Bollinger?

A: I honestly don't recall whether or not there was. It may have been. [Pretrial counsel] may have raised that. I may have raised that since I was the one cross-examining her at the time.

\*\*\*

Q. Right. Right. My question to you is was there – if there was not, because the record doesn't show an objection. So my question is would there have been a strategic reason not to object to that demonstrative evidence?

A: I would say based upon my recollection the reaction of the jury because they were somewhat taken aback.

Q: Okay.

A: I think she kind of, as far as I was concerned blew a little bit of credibility. She lost her demeanor. She also forgot to bring in certain things that were in the lab reports that would have been very damaging.

*Id.* at 14-17.

Trial counsel testified that if Dr. Briskin had been called to testify for the defense, "he would not have been able to refute anything and it would have given the Commonwealth the ability to expand upon the injuries and the fact that there was no other likely suspect[.]" *Id.* at 21.

The court denied Gudino's PCRA petition. The court credited counsel's testimony about the efforts made to "retain the services of multiple experts who were unwilling or unable to assist the defense case." Opinion, filed 8/29/24, at 8 (unpaginated). The court also likened the case to *Commonwealth v. Marinelli*, 810 A.2d 1257 (Pa. 2002), where our Supreme Court provided the standards by which counsel may be found ineffective for failing to call an expert:

> The Pennsylvania Supreme Court addressed a similar factual scenario in *Commonwealth v. Marinelli*, 810 A.2d 1257 (Pa. 2002). In *Marinelli*, the Court examined a PCRA petition in which Marinelli alleged, *inter alia*, that trial counsel was ineffective for failing to present an expert witness to oppose the Commonwealth's scientific expert in a homicide trial. *Id.* However, "[t]rial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony which was presented by the prosecution." *Marinelli*, 810 A.2d at 1270 (internal citations omitted).

- 5 -

*Id.* at 7 (unpaginated). The PCRA court concluded that both attorneys made "reasonable efforts" to secure a defense expert. *Id.* at 8 (unpaginated). The court also determined that trial counsel "engaged in an effective cross-examination of Dr. Bollinger at trial." *Id.* at 10 (unpaginated). The court determined that counsel had a reasonable basis for their trial strategy considering the "absence of the availability of an expert witness to rebut the Commonwealth expert[.]" *Id.* This timely appeal followed.

Gudino raises the following question: "Whether trial counsel rendered ineffectiveness of counsel by failing to engage an expert witness to rebut the direct and cross-examination testimony of the Commonwealth's forensic pathologist?" Gudino's Br. at 10 (unpaginated) (suggested answer omitted).

When reviewing the denial of PCRA relief, we determine whether the PCRA court's determinations "[are] supported by the evidence of record and [are] free of legal error." *Commonwealth v. Midgley*, 289 A.3d 1111, 1118 (Pa.Super. 2023) (citation omitted). We will not disturb the PCRA court's factual findings unless they are not supported by the certified record. *See id.* We review the court's legal conclusions *de novo*. *See Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011).

To establish a claim of ineffectiveness, a petitioner must overcome the presumption that counsel is effective. *Commonwealth v. Lesko*, 15 A.3d 345, 374 (Pa. 2011). This is done by pleading and proving that: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for the action or inaction; and (3) the petitioner suffered prejudice because of

counsel's action or inaction. **See Commonwealth v. Maddrey**, 205 A.3d 323, 327 (Pa.Super. 2019).

When a petitioner claims that counsel was ineffective for failing to call a witness, the petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1109 (Pa. 2012). "The mere failure to obtain an expert rebuttal witness is not ineffectiveness." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1143 (Pa. 2011) (citation omitted). Instead, the petitioner must establish "that an expert witness was available who would have offered testimony designed to advance appellant's cause." **Id.** (citation omitted).

Gudino argues that the **Marinelli** case relied on by the PCRA court is distinguishable. He notes that the issue in **Marinelli** was whether the victim was conscious when Marinelli shot him, and the Commonwealth presented an expert to show that the victim had gunshot residue on his arms, establishing that he had his hands up before the shooting. Gudino maintains that here, "there was no practical reason why his defense team should not have called an expert witness to validate the very questions which [trial counsel] asked Dr. Bollinger on cross-examination." Gudino's Br. at 15 (unpaginated). Gudino further asserts that trial counsel's cross-examination of the expert directly

contradicts "the defense team's claim that there was no reason to call an expert witness to rebut the Commonwealth's theory of the case" or show that the child's injuries could have been accidental or from a birth defect. *Id.* at 17-18 (unpaginated). He also argues that "given the overall defense strategy it appears that counsel's credibility regarding this issue is ultimately a question of credibility." *Id.* at 20 (unpaginated).

Here, Gudino fails to demonstrate that his claim has arguable merit. Gudino did not establish that an expert witness existed who would have been able to rebut the Commonwealth's theory of the case. At the evidentiary hearing, both attorneys testified regarding the efforts made to obtain an expert who could rebut the Commonwealth's theory. Despite these efforts, they were unable to identify an expert witness who could offer testimony in furtherance of the defense's theory of the case. Gudino has not ever identified a rebuttal expert who was ready, willing, and able to testify on his behalf at trial. As such, Gudino's claim of trial counsel's alleged ineffectiveness for failing to call a defense expert fails. *Chmiel*, 30 A.3d at 1143.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/25/2025