J-S31012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVON WRIGHT | : | |
| | : | |
| Appellant | : | No. 1537 EDA 2024 |

Appeal from the PCRA Order Entered November 17, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001903-2017

BEFORE: PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED NOVEMBER 25, 2025**

Davon Wright appeals from the order entered in the Court of Common Pleas of Philadelphia County dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 6541-6546, without a hearing. Wright raises issues regarding the effectiveness of his suppression counsel and appellate counsel. After careful review, we affirm.

On March 26, 2018, Wright was convicted of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1), firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1), carrying firearms in public in Philadelphia, 18 Pa.C.S.A. § 6108, and unlawful body armor, 18 Pa.C.S.A. § 907(c). Wright was sentenced to an aggregate term of eight to sixteen years' incarceration followed by one year of probation. On December 19, 2019, in a precedential opinion, this Court affirmed Wright's judgment of sentence. **See Commonwealth v. Wright**, 224 A.3d 1104 (Pa. Super. 2019) (**Wright I**).

The Pennsylvania Supreme Court denied Wright's petition for allowance of appeal on July 21, 2020.[1]

Relevant to his direct appeal and the instant appeal, this Court previously summarized the underlying factual history regarding Wright's suppression motion.

> Following his arrest, [Wright] filed a counseled omnibus pre-trial motion seeking the suppression of physical evidence seized by the police. Specifically, [Wright] averred the police lacked reasonable suspicion or probable cause to detain him beyond what was necessary to effectuate a routine traffic stop. The matter proceeded to a suppression hearing on July 18, 2017, at which Philadelphia Police Officer John Lang was the sole testifying witness.
>
> Officer Lang, who has been a police officer for over eleven years, testified that, on February 14, 2017, he and his partner were dispatched to Club Onyx on South Columbus Boulevard to investigate threats made against the club. N.T., 7/18/17, at 7-9, 15. Club Onyx is in an area where "numerous shootings" and "a few homicides" have occurred. *Id.* at 15-16. As the officers were driving a marked police cruiser to the club, at approximately 11:20 p.m., they observed a black Hyundai parked a short distance from the club in one of the two southbound travel lanes of Columbus Boulevard. *Id.* at 9-10. The officers did not effectuate a stop of the Hyundai, but continued to the club to perform their investigation. *Id.* at 10.
>
> The officers were in the club for approximately thirty to forty-five minutes, and when they left, they travelled northbound on Columbus Boulevard. *Id.* As they drove away from the club, they noticed the same black Hyundai was still parked in the same southbound travel lane of Columbus Boulevard. *Id.* at 10-12.

---

[1] Justice Wecht wrote a concurring statement regarding the dismissal of Wright's petition for allowance of appeal. *See **Commonwealth v. Wright**,* 237 A.3d 393, 394 (Pa. 2020) (Wecht, J., concurring).

At this point, the officers drove their police vehicle across the island between the northbound and southbound lanes and parked in front of the black Hyundai so that the vehicles came "bumper to bumper" with each other. *Id.* at 10. Officer Lang testified they "indicated a traffic stop" because the black Hyundai was parked near the club where they were investigating the threat offenses, and additionally, the vehicle was parked in a lane of travel as opposed to being in a proper parking spot. *Id.* at 10-11. Officer Lang noted that people are not "allowed to park in that lane," and "it's very hazardous to . . . park there." *Id.* at 11.

Officer Lang testified that, after he and his partner initiated the traffic stop, he approached the driver's side of the black Hyundai while his partner approached the passenger's side. *Id.* at 12. [Wright] was sitting in the driver's seat; there were no passengers in the black Hyundai. *Id.* Officer Lang testified he approached [Wright] and asked him for his license, registration, and insurance card. *Id.* He also asked [Wright] why he was parked in the travel lane, and [Wright] responded that he was "using his cell phone." *Id.* Officer Lang testified he had not seen [Wright] using his cell phone. *Id.* at 12-13. Officer Lang indicated that at this point in the interaction, [Wright], who was wearing tactical pants, used his left hand to grab towards a small pocket on his left pant leg while his right hand went towards the gearshift in the center console. *Id.* at 13.

Believing [Wright] was going to drive away, Officer Lang and his partner repeatedly requested that [Wright] exit the vehicle, and despite [Wright] saying "I am, I am, I am," [Wright] made no move to exit the vehicle. *Id.* at 13-14. Instead, [Wright] continued to reach for the gearshift. *Id.* at 14. Officer Lang opened the driver's side door and, at this point, he noticed [Wright] was wearing a ballistic vest with a police-style insignia or badge indicating "agent." *Id.* [Wright] was also wearing a thin, partially unzipped windbreaker over the vest. *Id.* Officer Lang observed that the front center pocket of the windbreaker was "very weighted down," and based on his training, he believed there was a firearm in the pocket. *Id.* at 14-15. [Wright] continued to resist exiting the black Hyundai while reaching for the gearshift, so Officer Lang, who feared for his safety, with the assistance of his partner, forcibly removed [Wright] from the black Hyundai. *Id.* at 15, 20.

After they removed [Wright] from the vehicle, they put him face-down on the ground, and Officer Lang "heard a clanking sound when [Wright] hit the ground." *Id.* at 21. Officer Lang believed the "clanking sound" was the sound of a gun hitting the ground. *Id.* Officer Lang indicated that [Wright] would not put his hands behind his back but kept them underneath his body. *Id.* When Officer Lang reached under [Wright] to grab his hands, he felt the firearm. *Id.* The officer took the firearm, which was a loaded Glock 19, and slid it underneath the parked black Hyundai so that it was out of everyone's reach. *Id.* at 22. [Wright] was then successfully handcuffed. *Id.*

Officer Lang testified the police seized from [Wright's] person the ballistics vest, a PA certified badge, a bail enforcement badge, a Philadelphia permit to carry a firearm, a certified agent identification card, and a laminated bail enforcement identification card. *Id.* at 23. Officer Lang later determined that [Wright's] permit to carry a firearm was not valid. *Id.*

*Wright I*, 224 A.3d at 1106-07 (original brackets omitted).

On September 16, 2020, Wright filed a timely pro se PCRA petition, and thereafter counsel filed an amended PCRA petition and supplemental petitions. In his petition, Wright raised claims of ineffective assistance of suppression counsel and appellate counsel related to failing to raise the issue of the suppression court's failure to make findings of fact and conclusions of law; failing to present evidence of a Facebook Instant Messenger video call between Wright and Iris Kessler, and Kessler as a witness, which supposedly would have contradicted Officer Lang's version of events; failing to challenge the validity of the traffic stop on direct appeal; and suppression counsel's failure to object to supposedly false testimony at the suppression hearing.

The Commonwealth filed a motion to dismiss and the PCRA court filed a Rule 907 notice. On November 17, 2021, the PCRA court issued an order

dismissing Wright's PCRA petition without a hearing. Wright timely appealed.[2]

Wright filed a 1925(b) statement and the PCRA court filed an opinion in support of its decision. *See* Pa.R.A.P. 1925(a)-(b).

On appeal, Wright raises the following issues.

1. Did the PCRA Court err by not granting a new trial or allowing an evidentiary hearing to be conducted to determine why suppression counsel failed to insist on findings of facts and conclusions of law be provided by the Suppression Court after the denial of the Motion to Suppress?

2. Did the PCRA Court err by not granting a new trial or an evidentiary hearing to be conducted to determine why suppression counsel failed to investigate, obtain, and present exculpatory evidence, specifically as to the records and documentation of [Wright's] Facebook Instant Messenger Video Call Communication with potential witness Iris Kessler?

3. Did the PCRA Court err by not granting a new trial or allowing an evidentiary hearing to be conducted to determine why suppression counsel failed to present Iris Kessler as a defense witness to rebut the fabricated testimony of the arresting officers at the Suppression Hearing?

4. Did the PCRA Court err by not granting a new trial or evidentiary hearing as to why appellate counsel, on direct appeal, failed to

_____

[2] Wright's appeal of the PCRA court's denial of his PCRA petition has taken a winding road to get to our present review. Initially, Wright's appeal was dismissed for failure to file a docketing statement pursuant to Pa.R.A.P. 3517. *See* Order, 2/28/22, Docket No. 2596 EDA 2021. On remand, Wright filed a subsequent pro se PCRA petition and while the petition was still pending with the PCRA court, Wright filed a notice of appeal. We quashed Wright's appeal as interlocutory. *See* Order, 12/27/22, Docket No. 2698 EDA 2022. On January 28, 2023, Wright filed a pro se supplementary PCRA petition seeking reinstatement of his appeal rights. On April 30, 2024, the PCRA court granted Wright's PCRA petition as to the reinstatement of his appellate rights. Thereafter, counsel was appointed, and Wright filed a timely notice of appeal. Additionally, Wright filed a 1925(b) statement and the PCRA court filed an opinion in support of its decision. Thus, the matter is currently ripe for review.

raise the issue of the Suppression Court's failure to state its findings of facts and conclusions of law which resulted in an inability by Superior Court to perform appellate review of the denial of the suppression motion?

5. Did the PCRA Court err by not vacating the judgment of the sentence and granting a new trial or allowing an evidentiary hearing to be conducted to determine why appellate counsel on direct appeal failed to raise a challenge to the validity of the initial traffic stop and police detention?

6. Did the PCRA Court err by not granting a new trial or allowing an evidentiary hearing to be conducted to determine why suppression counsel failed to object to the introduction or false testimony and manufactured evidence?

Appellant's Brief, at 8-9 (renumbered).

Each issue raised by Wright concerns claims of ineffective assistance of counsel. "Under the PCRA, ineffective assistance of counsel is one of the enumerated errors entitling a defendant to relief so long as the other conditions of the PCRA are met." *Commonwealth v. Bradley*, 261 A.3d 381, 390 (Pa. 2021). "Counsel is presumed to be effective." *Commonwealth v. Medina*, 209 A.3d 992, 1000 (Pa. Super. 2019) (brackets omitted).

> To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

*Id.* (citation omitted). "The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail." *Id.* (citation omitted). "[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim."

- 6 -

*Commonwealth v. Gibson*, 318 A.3d 927, 934 (Pa. Super. 2024) (citation omitted).

In his first and fourth issue, Wright claims that both his suppression counsel and direct appeal counsel were ineffective for failing to raise the issue that the suppression court failed to make findings of fact and conclusions of law after denying the suppression motion pursuant to Pennsylvania Rule of Criminal Procedure 580(I). *See* Appellant's Brief, at 27. Wright argues that he was prejudiced by counsel not raising this issue because the suppression court's failure to state findings of fact and conclusions of law after the suppression hearing hindered the Superior Court's review of his direct appeal. *See id.* at 27-29. The Commonwealth argues that Wright failed to establish that he was prejudiced because the *Wright I* Court was still able to perform appellate review of the denial of his suppression motion. *See* Appellee's Brief, at 8-11

Pennsylvania Rule of Criminal Procedure 581(I) directs a court at the conclusion of a suppression hearing to make findings of fact and conclusions of law. *See* Pa.R.Crim.P. 581(I). This Court has remanded for a new suppression hearing where the suppression court failed to make findings of fact and conclusions of law and did not file a 1925(a) opinion explaining its ruling. *See Commonwealth v. Sharaif*, 205 A.3d 1286, 1289-90 (Pa. Super. 2019). "However, we have conducted appellate review in situations when the suppression court failed to enter findings of fact and conclusions of law on the

record but issued a 1925(a) opinion explaining its ruling." *Commonwealth v. Miller*, 333 A.3d 470, 475-76 (Pa. Super. 2025) (citation omitted).

On direct appeal, the lower court issued an opinion explaining its suppression ruling. *See* 1925(a) Opinion, 4/3/19, 2-7.[3] In *Wright I*, this Court did not address the suppression court's failure to make findings of fact and its review indicated that it found the 1925(a) opinion to be satisfactory for appellate review. *See Wright I*, 224 A.3d at 1109 ("as the suppression court aptly noted[.]"). Further, other than general assertions that his direct review was hampered, Wright does not specify how the failure of the suppression court to make factual findings and conclusions of law would have led to a different outcome. *See* Appellant's Brief, at 27-29. Looking back at our prior review, it cannot be seriously argued that the 1925(a) opinion filed by the trial court did not satisfy our needs for appellate review. Therefore, Wright has failed to establish prejudice and his claim fails.

Similarly, Wright's fourth issue is without merit. Wright challenges the effectiveness of his direct appeal appellate counsel for not raising the issue of the suppression court violating Pa.R.Crim.P. 581(I). *See id.* at 37-40. He argues that this was his strongest appellate issue and appellate counsel's failure to raise it resulted in the constructive denial of effective counsel. *See*

---

[3] The Honorable Earl W. Trent issued the order denying Wright's motion to suppress. *See* Order, 7/18/17. The Honorable Benjamin Lerner was the presiding judge for Wright's jury trial through his direct appeal and wrote the 1925(a) Opinion. *See* 1925(a) Opinion, 4/3/19.

*id.* at 37-38. As previously stated, because the trial court in *Wright I* prepared a 1925(a) opinion, this Court was able to perform effective appellate review. Because appellate review was possible based on the court's 1925(a) opinion, appellate counsel raising the issue would not have resulted in this Court remanding for a new hearing or an otherwise different result. *See Miller*, 333 A.3d at 475-76. Therefore, Wright's claim fails.

In his second and third issue, Wright claims that suppression counsel was ineffective for failing to present exculpatory evidence, specifically documentation of a Facebook Instant Messenger video call between Wright and Kessler around the time of the traffic stop, and for failing to call Kessler as a witness. *See* Appellant's Brief, at 30-37. According to Wright, he was on a video call with Kessler "at the time that police approached his vehicle." *Id.* at 14. He argues that Kessler would have contradicted Officer Lang's testimony regarding the traffic stop and thus, there is a reasonable probability of a different outcome had she testified. *See id.* at 34. The Commonwealth argues that Wright failed to assert that suppression counsel was aware of Kessler and that no prejudice was possible because Kessler's own affidavit stated that her call with Wright ended before he interacted with the officers. *See* Appellee's Brief, at 12-15.

To establish a claim of ineffective assistance of counsel for failing to call a potential witness, a petitioner must plead and prove:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of,

the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1109 (Pa. 2012) (citations omitted).

The absence of Kessler's testimony did not prejudice Wright. Her affidavit stated only that she noticed police lights and that her video call ended before the officers approached the vehicle. ***See*** Kessler Affidavit. The officers clearly had probable cause to effectuate a traffic stop based on Wright's vehicle being parked in the roadway in violation of 75 Pa.C.S.A. § 3351. ***See*** ***Commonwealth v. Bozeman***, 205 A.3d 1264, 1273 (Pa. Super. 2019) (explaining that officers observing a vehicle stopped on the roadway where it was clearly practicable for the vehicle to park off the roadway established probable cause for a violation of 75 Pa.C.S.A. § 3351 and justified a traffic stop). Nothing from Kessler's proposed testimony could undermine the validity of the traffic stop. Further, she did not witness the remaining interaction between Wright and the officers. In other words, because the traffic stop was clearly valid and Kessler did not witness the interaction between Wright and the officers, there was not a reasonable probability that her testimony would have led to a different outcome. Therefore, Wright's claim fails.

In his fifth issue, Wright claims that appellate counsel was ineffective for failing to challenge the validity of the initial traffic stop.[4] *See* Appellant's Brief, at 40-41. Wright argues, without explanation, that if Kessler were called to testify "her testimony would have rebutted Police Officer Lang as to the validity of the stop." Appellant's Brief, at 41 (citation omitted). The Commonwealth argues that Wright's ineffectiveness claim fails because the underlying claim is meritless since the traffic stop was valid. Appellee's Brief, at 15-16. We agree.

Although the issue of the validity of the traffic stop was not before the Court in *Wright I*, this Court acknowledged "as the suppression court noted, the officers were permitted to effectuate a traffic stop due to [Wright's] violation of 75 Pa.C.S.A. § 3351, pertaining to parking a vehicle on the roadway." *Wright I*, 224 A.3d at 1108 n.3 (citing *Bozeman*, 205 A.3d 1264). As the facts indicated that Wright's vehicle was parked in a lane of traffic for close to an hour, a clear violation of 75 Pa.C.S.A. § 3351, the traffic stop was valid. *See Bozeman*, 205 A.3d at 1273. Wright does not offer any cogent argument as to why the traffic stop was invalid. Therefore, because his

---

[4] Wright also purports to claim that appellate counsel was ineffective for failing to challenge the validity of the detention. However, in Wright's brief on the issue he only focuses on the validity of the stop and makes no argument regarding the police detention. *See* Appellant's Brief, at 40-41. Therefore, the issue is waived.

underlying claim is meritless, he cannot establish that appellate counsel was ineffective for failing to raise the issue. *See Gibson*, 318 A.3d at 934.

In his final issue, Wright claims that suppression counsel was ineffective for failing to object to the "introduction of false testimony and manufactured evidence." Appellant's Brief, at 41. In the only paragraph in his brief addressing this issue, Wright alludes to "contradictions in police paperwork and omitted material facts that contained exculpatory evidence." *Id.* at 42. The Commonwealth argues that Wright's claim amounts to merely "boilerplate allegations and bald assertions" which are insufficient to satisfy a petitioner's burden to prove that counsel was ineffective. Appellee's Brief, at 16-17. We agree.

> The sole paragraph in Wright's brief on the issue reads as follows.
>
> [Wright] proffers that the Commonwealth knowingly false [sic] and testimony at the preliminary hearing and suppression hearings to manufacture probable cause where it did not exist. The Commonwealth called Officer Lang despite contradictions in police paperwork and omitted material facts that contained exculpatory evidence. Suppression Counsel failed to object, therefore depriving [Wright] of the right to a fair hearing. The arguable merit requirement is met where raising the issue of misconduct is a fundamental due process issue. There is no reasonable basis for not raising the issue of misconduct. [Wright] was prejudiced as he was not able to raise the issue of fabrication with the Suppression Court thereby resulting in the denial of the [m]otion to suppress.

Appellant's Brief, at 41-42.

Wright's unspecified conclusory statements and failure to cite any supporting case law results in waiver for lack of development. *See*

***Commonwealth v. Wright***, 314 A.3d 515, 523 (Pa. Super. 2024); Pa.R.A.P. 2119(a). Further, we agree with the Commonwealth that Wright's briefing contains only "boilerplate allegations and bald assertions," which are insufficient to meet Wright's burden to plead and prove that counsel was ineffective. ***See Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011). Thus, Wright's final issue does not merit relief.

Therefore, all of Wright's claims of ineffective assistance of counsel are meritless. Accordingly, we affirm the PCRA court's denial of Wright's PCRA petition.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/25/2025